IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SUNTRUST EQUIPMENT FINANCE AND LEASING CORP., )<br>)<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>BLUECHIP POWER, LLC, f/k/a )<br>BLUECHIP ENERGY, LLC; )<br>BLUECHIP ENERGY, LLC, f/k/a )<br>COMPLETE ELECTRIC )<br>CONTRACTORS, LLC; )<br>ADVANCED SOLAR PHOTONICS, )<br>LLC; LASER PHOTONICS, LLC, )<br>f/k/a C3 LASER, LLC; )<br>ICT INVESTMENTS, LLC; )<br>US INVESTING CORPORATION; )<br>DEMITRI NIKITIN a/k/a DIMITRI )<br>NIKITIN a/k/a DMITRI NIKITIN; )<br>SVETLANA NIKITIN a/k/a )<br>SVETLANA NIKITINA; FIFTH )<br>THIRD BANK; AEGIS BUSINESS )<br>CREDIT, LLC; ON DECK  CAPITAL, )<br>INC.; NEWLOGIC BUSINESS LOANS, )<br>INC., d/b/a APZB INDUSTRIES; )<br>JEFFERY L. CARRIER as trustee for )<br>the JEFFERY L. CARRIER )<br>REVOCABLE TRUST; FANUC )<br>ROBOTICS AMERICA )<br>CORPORATION f/k/a FANUC )<br>ROBOTICS AMERICA, INC.; )<br>SG EQUIPMENT FINANCE USA )<br>CORP.; SUNIVA, INC.; WANXIANG )<br>AMERICA CORP.;  RINEHART )<br>DEVELOPMENT AND )<br>INVESTMENT GROUP, LLC; and )<br>MICHAEL E. MOECKER as assignee )<br>for BLUECHIP ENERGY, LLC, )<br>)<br>**Defendants.** )<br>_____ ) | CASE NO. ___6:13-cv-657-Orl-28KRS___ |

## VERIFIED COMPLAINT FOR MONETARY JUDGMENT, PETITION FOR APPOINTMENT OF RECEIVER, REPLEVIN, FORECLOSURE, AND INJUNCTIVE RELIEF

COMES NOW Plaintiff, SunTrust Equipment Finance and Leasing Corp. (the "**Plaintiff**"), by and through its undersigned counsel, and hereby files this Verified Complaint for Monetary Judgment, Petition for Appointment of Receiver, Replevin, Foreclosure, and Injunctive Relief against the above-captioned defendants (collectively, the "**Defendants**").  In support of this Complaint, Plaintiff shows the Court as follows:

### SUMMARY OF ACTION

This action arises out of an equipment finance leasing relationship (the "**Finance Lease Arrangement**") and related personal guaranties that are in payment default, among other defaults, which Finance Lease Arrangement went into payment default merely two and a half months after its inception.  It is undisputed that the lessee defendants to this action do not have the working capital to remain in business and must liquidate.  Substantially all of the business assets of the lessee defendants are owned by the Plaintiff or are subject to Plaintiff's security interest.  Plaintiff seeks the appointment of a receiver to assume control over certain of the Defendants and possession of certain real and personal property located in Seminole County, Florida, which is either Plaintiff's property or is serving as collateral securing the lease obligations, as the majority of the property is large, fragile machinery and solar panels not suitable for pre-judgment replevin.  Plaintiff also seeks monetary and injunctive relief, judicial foreclosure, and post-judgment replevin.

2

## PARTIES, NAME CHANGES, JURISDICTION, AND VENUE

1.      Plaintiff is a Virginia corporation whose principal place of business is in Baltimore County, Maryland and is authorized to transact business in the State of Florida. For diversity purposes, Plaintiff is a citizen of both Virginia and Maryland.

2.      Defendant Demitri Nikitin a/k/a Dimitri Nikitin a/k/a Dmitri Nikitin is an individual residing in the Middle District of Florida and domiciled in Florida ("**D. Nikitin**").

3.      Defendant Svetlana Nikitin a/k/a Svetlana Nikitina is an individual residing in the Middle District of Florida and domiciled in Florida ("**S. Nikitin**," and together with D. Nikitin, the "**Guarantors**").

4.      Defendant ICT Investments, LLC, is a Wyoming limited liability company with its principal place of business in Seminole County, Florida ("**ICT Investments**"). According to the documents from ICT Investments underwriting the Finance Lease Arrangement and provided by ICT Investments, the Guarantors are the only members of ICT Investments.  The Guarantors are Florida citizens and therefore ICT Investments is a Florida citizen.

5.      Defendant BlueChip Energy, LLC, f/k/a Complete Electric Contractors, LLC, is a Florida limited liability company with its principal place of business in Seminole County, Florida ("**Company 1**").  According to the documents from Company 1 in connection with entering into the Finance Lease Arrangement, the sole member of Company 1 is BlueChip Power, LLC, whose sole member is ICT Investments.  Therefore Company 1 is a Florida citizen.

3

6.     On December 1, 2011, Company 1 changed its named from Complete Electric Contractors, LLC, to BlueChip Energy, LLC.

7.     Defendant BlueChip Power, LLC, f/k/a BlueChip Energy, LLC, is a Florida limited liability company with its principal place of business in Seminole County, Florida ("**Company 2**").  According to the documents from Company 2 in connection with entering into the Finance Lease Arrangement, ICT Investments is the sole member of Company 2, which is therefore a Florida citizen.

8.     On December 1, 2011, Company 2 changed its name from BlueChip Energy, LLC, to BlueChip Power, LLC.

9.     Defendant Laser Photonics, LLC, f/k/a C3 Laser, LLC, is a voluntarily dissolved Florida limited liability company with its principal place of business in Seminole County, Florida ("**Company 3**").  According to the documents from Company 3 in connection with entering into the Finance Lease Arrangement, ICT Investments is the sole member of Company 3, which is therefore a Florida citizen.

10.    On February 22, 2011, Company 3 changed its name from C3 Laser, LLC, to Laser Photonics, LLC, apparently to maintain the goodwill of another affiliated but separate Florida limited liability company also called Laser Photonics, LLC, which filed articles of dissolution on August 31, 2009, in an apparent attempt to avoid creditors.

11.    On March 12, 2013, Company 3 also filed articles of dissolution.

12.    Defendant Advanced Solar Photonics, LLC, is a Delaware limited liability company with its principal place of business in Seminole County, Florida ("**Company 4**").  According to the documents from Company 4 in connection with

entering into the Finance Lease Arrangement, ICT Investments is the sole member of Company 4 which is therefore a Florida citizen.

13.     Company 4 was formed on May 15, 2009.  Twenty-five (25) days prior to the formation of Company 4, another affiliated but separate Florida limited liability company also called Advanced Solar Photonics, LLC, changed its name to SolarFab, LLC.

14.     Defendant US Investing Corporation is a Delaware corporation with its principal place of business in Seminole County, Florida ("**US Investing**").

15.     Defendant Michael E. Moecker, in his capacity as assignee of Company 1, is a resident of Broward County Florida, and is domiciled in Florida (the "**Assignee**," and together with Company 1, Company 2, Company 3, Company 4, ICT Investments, and US Investing, the "**Lessee Defendants**").

16.     Defendant Rinehart Development and Investment Group, LLC, is a Florida limited liability company with its principal place of business in Seminole County, Florida and owns the property that it leases to certain of the Lessee Defendants on which they operate their businesses (the "**Landlord**").  Upon information and belief, the only members of the Landlord are Gulamabbas Abdulhussein, domiciled in Florida, and the Abdulhussein Family Limited Partnership ("**AFLP**").  The general partner of AFLP is Abdulhussein, Inc., a Florida corporation with its principal place of business in Seminole County, Florida.  Upon information and belief, the limited partners of AFLP are Gulamabbas Abdulhussein and J. M. Abdulhussein who are both domiciled in Florida.

17.     Defendant Fifth Third Bank is an Ohio banking corporation with its principal place of business in Hamilton County, Ohio ("**Fifth Third**").

18.     Defendant Aegis Business Credit, LLC is a Florida limited liability company with its principal place of business in Hillsborough County, Florida ("**Aegis Business**"). Upon information and belief, the members of Aegis Business are Robert K. Beard and Jeff "Jay" Baldwin, who are both domiciled in Florida.

19.     Defendant NewLogic Business Loans, Inc. d/b/a APZB Industries is a Massachusetts corporation with its principal place of business in Rockland, Massachusetts ("**APZB Industries**").

20.     Defendant Jeffery L. Carrier, in his capacity as the trustee of The Jeffery L. Carrier Revocable Trust, is an individual residing in Collier County, Florida and domiciled in Florida and who is the true party in interest for The Jeffery L. Carrier Revocable Trust ("**Carrier**").

21.     Defendant Fanuc Robotics America Corporation f/k/a Fanuc Robotics America, Inc., is a Delaware corporation with its principal place of business in Oakland County, Michigan ("**Fanuc Robotics**").

22.     Defendant SG Equipment Finance USA Corp. is a Delaware corporation with its principal place of business in Hudson County, New Jersey ("**SG Equipment**").

23.     Defendant Suniva, Inc., is a Delaware corporation with its principal place of business in Gwinnett County, Georgia ("**Suniva**").

24.     Defendant Wanxiang America Corp. is a Kentucky corporation with its principal place of business in Cook County, Illinois ("**Wanxiang**," and together with

Fifth Third, the Landlord, Aegis Business, APZB Industries, Carrier, Fanuc Robotics, SG Equipment, Suniva, and ICT Investments (in its capacity as a purported lienholder), the "**Lien Claimants**").

25.     Plaintiff is not the citizen of the same state as any of the Defendants.

26.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because multiple Defendants reside within the Middle District of Florida, Orlando Division as set forth in 28 U.S.C. § 89, because a substantial part of the events or omissions giving rise to this action occurred in the Middle District of Florida, Orlando Division, because certain personal and real property which is the subject of this action is situated in the Middle District of Florida, Orlando Division.

## FACTUAL ALLEGATIONS

### A.     THE FINANCE LEASE ARRANGEMENT

28.     On December 10, 2012, to memorialize and evidence the Finance Lease Arrangement, Plaintiff and the Lessee Defendants entered into that certain Equipment Lease Agreement No. 08830, together with that certain Rider No. 1, Rider No. 2, Rider No. 3, Rider No. 4, and Rider No. 5 of even date therewith, and certain schedules and other documents related thereto for the sale to Lessor, and the lease back to the Lessee Defendants of certain personal property used by the Lessee Defendants in their businesses (collectively, the "**Lease Agreement**"). The Lessee Defendants executed the

Lease Agreement in joint and several capacities such that each Lessee Defendant is jointly and severally liable for all obligations under the Lease Agreement and are jointly and severally the lessees under the Lease Agreement. A copy of the Lease Agreement, including Riders Nos. 1 through 5, is attached hereto as **Composite Exhibit A**.

29.     The Lease Agreement references and incorporates that certain Equipment Schedule No. 1 dated December 10, 2012 ("**Schedule No. 1**") executed by Plaintiff and the Lessee Defendants. A copy of Schedule No. 1 is attached hereto as **Exhibit B**.

30.     Schedule No. 1 references and incorporates that certain Schedule of Stipulated Loss Values dated December 10, 2012 (the "**Loss Calculation Schedule**") executed by Plaintiff and the Lessee Defendants. A copy of the Loss Calculation Schedule is attached hereto as **Exhibit C**.

31.     Schedule No. 1 references and incorporates that certain Schedule of Equipment executed by the Lessee Defendants (the "**Schedule of Equipment**") executed by the Lessee Defendants. A copy of the Schedule of Equipment is attached hereto as **Exhibit D**.

32.     The Schedule of Equipment describes certain personal property which Plaintiff purchased and leased to the Lessee Defendants pursuant to this Finance Lease Arrangement (the "**Leased Property**"). The Leased Property is more particularly described in the Schedule of Equipment by both specific reference to particular equipment, solar panels, conductors, and inverters, and also by reference to all assets described on the following three appraisals: (a) that certain Southeast Equipment Valuation Summary Appraisal on Solar Panel Manufacturing Equipment dated

8

November 29, 2010 (the "**Solar Panel Manufacturing Equipment Appraisal**"); (b) that certain Industrial Assets Appraisals and Consulting, Inc. Summary Appraisal of Specified Manufacturing Equipment dated October 18, 2012 (the "**Specified Manufacturing Equipment Appraisal**"); and (c) that certain that certain Industrial Assets Appraisals and Consulting, Inc. Summary Appraisal of Power Generation Equipment dated October 18, 2012 (the "**Power Generation Equipment Appraisal**," and together with the Solar Panel Manufacturing Equipment Appraisal and the Specified Manufacturing Equipment Appraisal, the "**Appraisals**"). Copies of the Appraisals are attached hereto as **Composite Exhibit E**.

33.     On December 10, 2012, the Lessee Defendants executed that certain Acceptance Certificate, certifying that, among other things, the Lessee Defendants had received, inspected, and approved the Leased Property, acknowledging the disclaimer by Plaintiff of any warranties, and authorizing Plaintiff to finance the acquisition of clean title to the Leased Property (the "**Acceptance Certificate**"). A copy of the Acceptance Certificate is attached hereto as **Exhibit F**.

34.     On December 10, 2012, the Lessee Defendants executed that certain Pay Proceeds Letter/Disbursement Authorization, acknowledging delivery, acceptance, and the good working order of the Leased Property and warranting that payments described therein constituted full and final payment to all persons necessary so that the Leased Property would be owned by Plaintiff free of all liens and encumbrances (the "**Disbursement Authorization**"). A copy of the Disbursement Authorization is attached hereto as **Exhibit G**.

35.   As further security for the Lessee Defendants' obligations under the Finance Lease, the Lease Agreement grants to Plaintiff a first position security interest and lien in the following assets, described *verbatim*:

>     (i)   (if contrary to the parties' intentions a court determines that such Schedule is not a true "lease" under the UCC) the Equipment described in such Schedule or otherwise covered thereby (including all inventory, fixtures or other property comprising the Equipment), together with all related software (embedded therein or otherwise) and general intangibles, all additions, attachments, accessories and accessions thereto whether or not furnished by the Supplier;

>     (ii)   all subleases, chattel paper, accounts, security deposits, and general intangibles relating thereto, and any and all substitutions, replacements or exchanges for any such item of Equipment or other collateral, in each such case in which Lessee shall from time to time acquire an interest; and

>     (iii)   any and all insurance and/or other proceeds of property and other collateral in and against which a security interest is granted hereunder

(collectively, the "**Collateral**").

36.   The Leased Property and the Collateral constitute substantially all the assets of the Lessee Defendants.

37.   Plaintiff duly perfected its security interests and liens in the Collateral by filing UCC-1 Financing Statements on each of the Lessee Defendants in the appropriate jurisdiction (the "**Financing Statements**").   Copies of the Financing Statements are attached hereto as **Composite Exhibit H**.

38.   As further security for the Lessee Defendants' obligations under the Finance Lease, D. Nikitin executed and delivered to Plaintiff that certain Equipment Lease

Guaranty dated December 10, 2012 (the "**D. Nikitin Guaranty**"). A copy of the D. Nikitin Guaranty is attached hereto as **Exhibit I**.

39.      As further security for the Lessee Defendants' obligations under the Finance Lease, s. Nikitin executed and delivered to Plaintiff that certain Equipment Lease Guaranty dated December 10, 2012 (the "**S. Nikitin Guaranty**," and together with the D. Nikitin Guaranty, the "**Guaranties**"). A copy of the S. Nikitin Guaranty is attached hereto as **Exhibit J**.

40.      As further confirmation of Plaintiff's interest in and to the Leased Property, the Landlord executed and delivered to Plaintiff that certain Real Property Waiver dated December 10, 2012, in which the Landlord, *inter alia,* waived any lien or other interest in the Leased Property and consented to the removal of, or auction on site of, the Leased Property in case of default by the Lessee Defendants (the "**Real Property Waiver**"). A copy of the Real Property Waiver is attached hereto as **Exhibit K**.

41.      As further confirmation of Plaintiff's interest in and to the Leased Property and the Collateral, Plaintiff and Fifth Third entered into that certain Subordination and Intercreditor Agreement dated December 14, 2012, by which Fifth Third released any of its liens or other interests in the Leased Property, to the extent the Leased Property is in fact owned by Plaintiff, and by which Fifth Third subordinated any of its liens or other interests in the Collateral (the "**Intercreditor Agreement**").

42.      Plaintiff is the owner and holder of, or the beneficiary to, the Lease Agreement, Schedule No. 1, the Loss Calculations Schedule, the Schedule of Equipment incorporating the Appraisals, the Acceptance Certificate, the Disbursement

Authorization, the Financing Statements, and the Guaranties, which documents (collectively, the "**Lease Obligation and Security Documents**") evidence and govern the Finance Lease Arrangement between Plaintiff, the Lessee Defendants, and the Guarantors.

43.     The Lease Obligation and Security Documents are expressly governed by the laws of the State of Maryland.

44.     Plaintiff is the owner and holder of, or the beneficiary to, the Real Property Waiver and the Intercreditor Agreement (collectively, the "**Subordination Documents**," and together with the Lease Obligation and Security Documents, the "**Lease Documents**").

**B.      DEFAULT**

45.     The Lessee Defendants defaulted under the Lease Obligation and Security Documents, *inter alia*, by virtue of their failure to make the rental payment and other charges due on February 28, 2013, a mere two and a half months from the inception of the Finance Lease Arrangement.

46.     The Lessee Defendants further defaulted under the Lease Obligation and Security Documents by virtue of Company 1 filing an assignment for the benefit of creditors in the circuit court of the eighteenth judicial circuit in and for Seminole County, Florida, Case No. 2013-CA-1769, and executing an assignment of all its assets to the Assignee.

47.     The Lessee Defendants further defaulted under the Lease Obligation and Security Documents by virtue of Company 3 filing articles of dissolution.

48. The Lessee Defendants further defaulted in that they have become generally unable to pay their debts as they come due, as the Lessee Defendants are currently delinquent with their employees, customers, vendors, suppliers, and lenders.

49. On account of these defaults, Plaintiff hereby exercises certain of its rights and remedies under the Lease Obligation and Security Documents, including its right to terminate the Finance Lease Arrangement, and hereby terminates said Finance Lease Arrangement and accelerates all payments due under the terms of the Lease Obligation and Security Documents, as it is permitted to do under the terms thereof.

50. As of the filing of this Complaint, Plaintiff is owed in excess of $5,000,000.00 in accelerated and unpaid rent, which amounts are due and payable on the date of such termination, without notice or demand, from each of the Lessee Defendants, jointly and severally (the "**Indebtedness**").

51. On account of these defaults, the Guarantors are in default of their Guaranties and are liable to Plaintiff for the Indebtedness pursuant to the Guaranties.

52. To date, the Lessee Defendants and the Guarantors have failed and refused to tender the amounts owed to Plaintiff under the Lease Obligation and Security Documents.

53. All conditions precedent necessary for the institution or maintenance of this action have occurred or have been otherwise satisfied.

### C.      GROUNDS FOR RECEIVERSHIP

54.      These defaults were occasioned by an indisputable lack of cash flow.  The Lessee Defendants do not have sufficient revenues with which to make any payments or with which to even operate their business.

55.      The Lessee Defendants have further failed to pay their employees and contractors in the ordinary course of business.  Upon information and belief, the Lessee Defendants have spent deposit funds from customers to pay for operations.

56.      Currently, the Lessee Defendants appear to be selling Collateral, but the proceeds of the sales are not being used to replace the Collateral, and are merely an unorganized liquidation as the Lessee Defendants are hopelessly insolvent.  In spite of these sales, no payments have been made to Plaintiff since January, 2013.

57.      The business operations of the Lessee Defendants have almost completely ceased.  The Lessee Defendants have indicated to Plaintiff that they are considering an assignment for the benefit of creditors for the Lessee Defendants.  As of the filing of this Verified Complaint, Company 1 has filed a petition for an assignment for the benefit of creditors and executed a general assignment of all its assets to Assignee.

58.      The Lessee Defendants were recently unable to renew a vital line of credit arrangement with Fifth Third, which has further deteriorated the Lessee Defendants' liquidity and ability to pay debts.  The Lessee Defendants have presented to Plaintiff no solution to their lack of liquidity and transparent insolvency except a proposed sale of ownership interests in a solar farm, but even the Lessee Defendants admit they cannot

pay their debts as they come due from operations revenue and that they have no concrete proposals for refinancing.

59.    In fact, in a desperate attempt to generate revenue, certain of the Lessee Defendants entered into non-traditional, high-interest rate financing and factoring relationships with Aegis Business, On Deck Capital, and APZB Industries, which lenders promptly filed UCC-1 Financing Statements on all assets of the following Lessee Defendants:

    (a)    Company 1:

        (i)    1-7-2013 – UCC-1 filed by Aegis Business

        (ii)    2-13-2013 – UCC-1 filed by APZB Industries

    (b)    Company 2:

        (i)    1-7-2013 – UCC-1 filed by Aegis Business

    (c)    Company 4:

        (i)    1-7-2013 – UCC-1 filed by Aegis Business

    (d)    ICT Investments:

        (i)    1-7-2013 – UCC-1 filed by Aegis Business

        (ii)    2-14-2013 – UCC-1 filed by On Deck Capital[1]

60.    Furthermore, in March 2013, for no apparent justification and without the consent of Plaintiff, ICT Investments—one of the Lessee Defendants—filed UCC-1

---

[1] The UCC-1 Financing Statement of On Deck Capital is filed in the wrong jurisdiction and therefore invalid. It also fails to include the name of the secured party, which is only surmised by Plaintiff from the email address listed thereon. Nevertheless, the existence of the UCC-1 Financing Statement is further evidence of the economic distress under which the Lessee Defendants feel obliged to seek so-called "hard money" lenders or factorers.

Financing Statements on all assets of its affiliates, Company 1, Company 2, and Company 4.

61.    The Lessee Defendants are obviously in dire economic straits and are unquestionably insolvent.   Aegis Business and On Deck Capital are non-traditional financing companies.  On Deck Capital, for example, advertises loans at interest rates from 18% and up.

62.    Upon inspection of the Leased Property and Collateral by representatives of the Plaintiff, the Plaintiff discovered that certain equipment was missing and that the Lessee Defendants were showing the Leased Property and the Collateral for sale to potential buyers.  Attached hereto as **Exhibit L** and **Exhibit M** are copies of affidavits of James Rollo and Aryan Rochon, respectively, describing the state of the Leased Property and Collateral, and indicating evidence of sales and dissipation.

63.    The Lessee Defendants have had, and continue to have, significant cash flow problems, and, upon information and belief, have compensated for this lack of cash flow by producing inferior equipment for installation.   In fact, one installer of such equipment has begun accusing Company 1 and Company 4 of providing intentionally inferior products in a scheme to over-collect on government refunds.  Attached hereto as **Exhibit N** is an article dated April 10, 2013, by an installer.

64.    In addition, the same installer has accused Company 1 and Company 4 of "inflating the efficiency rates of its solar PV panels." Attached hereto as **Exhibit O** is an article dated March 29, 2013, by the same installer.

65.    In fact, on February 1, 2013, Company 4 "announced a product recall of approximately 1000 photovoltaic (PV) modules for reasons of code compliance." A copy of the internal notice from Company 4 is attached hereto as **Exhibit P**.

66.    Even more worrisome, Underwriters Laboratories ("**UL**"), the independent entity deputized by OSHA to test and approve all electronic products, issued a warning on April 15, 2013, that Company 1 and Company 4 have been issuing photovoltaic panels which bear counterfeit UL Marks for the United States and Canada. A copy of the Public Notice from UL and a recent article from the Wall Street Journal are attached hereto as **Composite Exhibit Q**.

67.    The Lessee Defendants have further engaged in a pattern and practice of name changing with the apparent intention of avoiding payment to creditors, nullifying the effects of prior UCC-1 Financing Statements, and generally creating confusion in what appears to be a complicated corporate shell game. Such a practice, although circumstantial, is an obvious badge of fraud.

68.    A further badge of fraud is that the Lessee Defendants defaulted on the Lease Financing Arrangement a mere two and a half months from its inception and funding.

69.    Plaintiff has good reason to believe that the Lessee's intentions are fraudulent as D. Nikitin has a troubling history of bad faith conduct. *See Optowave Co., Ltd. v. Nikitin*, 6:05-cv-1083-orl-22-DAB, 2006 WL 3231422, *11 (M.D. Fla. Nov. 7, 2006)("The Court finds that Nikitin allowed relevant evidence to be destroyed in bad faith. Destroying or allowing destruction of Tudor's customer file and emails was a

blatant disregard for the liberal rules of discovery which undermines the integrity of the judicial process and warrants sanctions.").

70.     In multiple meetings between Plaintiff's representatives and the Lessee Defendants, the Plaintiff has requested information such as financial records, receivable reports, income statements, alleged commitment letters for refinancing, and other documents necessary for Plaintiff to judge the status of the Lessee Defendants' financial condition and refinancing efforts.   The Lessee Defendants have failed to provide the requested information.

71.     The Leased Property and the Collateral consist, in general, of large, sophisticated machinery and bulky, fragile solar generation equipment, including panels. Some of the Leased Property and Collateral is affixed to the real property in which the Lessee Defendants lease space and cannot be readily removed or stored in a short period of time.   In light of the logistics of disassembling, removing, transporting, and reassembling various large machines, with the attendant risk of lost parts and damage, pre-judgment replevin is not an effective remedy for Plaintiff, and it is necessary for the preservation of the Leased Property and the Collateral that a third-party be appointed to secure, preserve, catalogue, and liquidate the Leased Property and Collateral in an orderly fashion without the necessary of disassembling, removing, storing, and reassembling fragile machinery and inventory.

## COUNT I
## RECEIVERSHIP
## (ALL DEFENDANTS)

72.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

73.     Plaintiff is entitled to the appointment of a receiver due to the Lessee Defendants' failure and financial inability to properly maintain and manage the Leased Property and the Collateral. The Leased Property and Collateral are not being utilized in the ordinary course of business, are being sold by insolvent entities, and are being liquidated. The proceeds of these sales are not currently being paid to Plaintiff, who has not received any payment on the Lease Financing Arrangement since January, 2013.

74.     Unless a receiver is appointed to take possession, manage, preserve and protect the Leased Property and the Collateral, there is a manifest danger of loss, destruction or material injury to the Leased Property and Collateral, and therefore a manifest danger of material injury to Plaintiff, since the Leased Property and the Collateral serve as the sole security for the Indebtedness owed to Plaintiff by the Lessee Defendants.

75.     A receiver should be appointed until such time as the Leased Property and Collateral can be sold or liquidated by foreclosure, receiver sale, or non-judicial sale pursuant to the Uniform Commercial Code.

76.     Plaintiff requests that Robert E. Swett of RS Asset Management, LLC ("RSAM") be appointed as receiver for the Lessee Defendants and their assets.

77.    RSAM has significant experience in both receiverships and assignments for the benefit of creditors and is an expert in preserving and liquidating sophisticated personal property.

78.    Robert E. Swett has agreed to be appointed and act as receiver for the Lessee Defendants and their assets subject to the entry of a mutually agreeable appointment order setting forth the terms and scope of the receiver's authority and duties.

WHEREFORE, Plaintiff respectfully requests this Court enter an order appointing Robert E. Swett as receiver for the Lessee Defendants and their assets, empowering the receiver with the following rights and duties, and for such other relief as is just and proper:

(a)    Take immediate possession of all of the property and assets of the Lessee Defendants including but not limited to all, machinery, equipment, furniture, fixtures, inventory, accounts, deposit accounts, utility deposits, other deposits, franchises, patents, trademarks, copyrights, and any other intellectual property, rights, privileges, or effects, books, records, accounting records, federal, state and local tax returns, securities, mortgages, stocks, bonds, debentures, computers, computer disks, banks statements, checks, and all real property of the Lessee Defendants wherever situated, and to administer such assets and property as is directed to comply with the directions contained in this Order, and to hold all assets and property pending further Order of this Court;

(b)    Enter upon, gain access to, and take possession of the Lessee Defendants' assets and property to use, operate, manage, control, preserve and/or sell;

(c)    Engage persons in his discretion to assist him in carrying out his duties and responsibilities as receiver as needed;

(d)    Undertake any and all acts necessary in his sole discretion to comply with applicable laws, orders, directives and permits;

(e)    Assume control of and be named as authorized signatory for all accounts at any bank, brokerage firm or financial institution which

has possession, custody or control of any assets or funds, wherever situated, of the Lessee Defendants, and upon Order of this Court, of any of their subsidiaries or affiliates, provided that the receiver deems it necessary;

(f)     Receive all income and profits from the use, operation, collection, sale, lease or other disposition of the Lessee Defendants' assets and property; to care for, preserve, protect, secure and maintain the Lessee Defendants' assets and property, until they are sold and to incur the reasonable expenses necessary for such care, preservation and maintenance;

(g)     Demand, collect, and receive all revenues, income, and profits currently in the possession, custody, or control of the Guarantors or now due and hereafter coming due from the operation of the Lessee Defendants, and to keep the Lessee Defendants' assets and property insured and in good repair, provided, however, that nothing herein shall compel the receiver to use his own funds to do any of the foregoing;

(h)     Access and take possession of any monies and funds on deposit in any banks and/or savings and loan associations in the name of the Lessee Defendants, and the receiver's receipt of said monies and funds shall discharge said banks and/or savings and loan associations from further responsibility for accounting to the Lessee Defendants for monies and funds for which the receiver shall give his receipt;

(i)     Take possession of all the books and records pertaining to the Lessee Defendants and the Lessee Defendants' assets and property, wherever located, as the receiver deems necessary for the proper administration, management and/or control of the receivership, but the books and records shall be made available to the Lessee Defendants, the Guarantors, and their counsel upon request; and to receive, open, read, and respond to all mail addressed to the Lessee Defendants or Guarantors, with the exception of correspondence addressed to the Guarantors by their counsel;

(j)     Negotiate and enter into contracts that are necessary or incidental to preserving, protecting, managing and/or controlling the Lessee Defendants and the Lessee Defendants' assets or property;

(k)     Remit any of the proceeds from the sales of or the collection of the Lessee Defendants accounts receivable to Plaintiff until the indebtedness owed to Plaintiff has been paid in full, as long as this occurs after making provision for the payment of actual and estimated

costs and expenses in accordance with this Order, inclusive of the fees and costs of the receiver;

(l)     Establish bank accounts for the deposit of monies and funds collected and received in connection with the operation of Lessee Defendants and administration of the receivership and to transfer all monies and funds on deposit in the name of the Lessee Defendants upon the entry of this order into such accounts; provided that any funds on deposit are insured up to customary limits by an agency of the United States of America;

(m)     Institute ancillary proceedings in this state or other states as are necessary to preserve and protect any of the Lessee Defendants' assets or property or to provide advice and counsel to the receiver;

(n)     Determine the value of the Lessee Defendants, to receive and evaluate purchase offers for any of the Lessee Defendants' assets and property, to sell all right, title, and interest of the Lessee Defendants in any of the Leased Property and Collateral and to remit the proceeds to Plaintiff, and to cooperate with Plaintiff and/or other lien-claimants in the non-judicial sale of any Leased Property or Collateral; and,

(o)     Do any and all other acts which could be carried out lawfully by a corporation in the State of Florida where said acts are necessary for the carrying out of the final settlement of the unfinished business of the Corporations and the winding down of their affairs.

**COUNT II**
**INJUNCTIVE RELIEF**
**(LESSEE DEFENDANTS AND GUARANTORS)**

79.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 and 73 through 78 above as though fully set forth herein.

80.     This is an action for injunctive relief, both preliminary and permanent.

81.     Plaintiff is suffering and will continue to suffer immediate and irreparable injury, loss and damage unless the Lessee Defendants and anyone acting on behalf of or through or under the Lessee Defendants is enjoined from taking any actions which

interfere with Plaintiff's ownership or security interests in the Leased Property and Collateral, or with the an appointed receiver's rights, powers, duties, and objectives as outlined and sought above.

82.     Courts regularly grant injunctive relief to secure and protect the assets of a secured creditor or lessor from the threat of dissipation when the debtor at issue is insolvent.

83.     The likelihood of irreparable harm to Plaintiff is great because absent injunctive relief, the Lessee Defendants will continue to violate their contractual duties, resulting in dissipation of the Leased Property and Collateral that will be impossible to recover.   Moreover, haphazard dissipation of the Leased Property and Collateral will destroy the going concern value of the businesses.

84.     There is little harm to the Lessee Defendant in granting an injunction, which only would require the Lessee Defendants to do that which they are required to do under the Lease Obligation and Security Documents and because the Lessee Defendants have stopped regular operations, begun to liquidate, are insolvent, and have indicated an intention to make an assignment for the benefit of creditors.

85.     The public interest is furthered by the granting of injunctive relief as the preservation of the Leased Property and Collateral may permit a bulk sale to a new buyer who may maintain operations by recapitalization.   If the Leased Property and Collateral is instead dissipated and liquidated in an unorderly and haphazard fashion, the going concern value of the Lessee Defendants' businesses will be irretrievably lost.

86.     Plaintiff, upon this Court's request, will post a bond, but a bond may not be required as the Lessee Defendants appear to be already in the process of liquidating and winding up their affairs.

WHEREFORE, Plaintiff respectfully requests this Court enter an order enjoining the Lessee Defendants and the Guarantors and their respective members, owners, general partners, limited partners, officers, agents, employees, affiliates and others acting on their behalf, from the following actions, and for such other relief as is just and proper:

(a)     Withdrawing, collecting, paying, or otherwise transferring any funds derived from operation or use of the Leased Property or Collateral except to an appointed receiver or to the Plaintiff;

(b)     Removing any of the Leased Property or Collateral located at the Lessee Defendants' offices and warehouses;

(c)     Placing the Leased Property and Collateral in danger of destruction;

(d)     Concealing the Leased Property and Collateral;

(e)     Selling the Leased Property or Collateral to an innocent purchaser or any other person;

(f)     Removing, destroying, concealing, or refusing to turn over to an appointed receiver any of the documents or electronic data relating to the Leased Property or Collateral; and

(g)     Taking any action with respect to the Leased Property or Collateral without the express written consent of an appointed receiver or the Plaintiff.

### COUNT III
### BREACH OF CONTRACT
### (LESSEE DEFENDANTS)

87.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 above as though fully set forth herein.

88.   The Lessee Defendants defaulted under the Lease Obligation and Security Documents, *inter alia*, by virtue of their failure to make the rental payment and other charges due on February 28, 2013.

89.   The Lessee Defendants further defaulted under the Lease Obligation and Security Documents by virtue of Company 3 filing articles of dissolution.

90.   The Lessee Defendants further defaulted under the Lease Obligation and Security Documents by virtue of Company 1 filing an assignment for the benefit of creditors in the circuit court of the eighteenth judicial circuit in and for Seminole County, Florida, Case No. 2013-CA-1769, and executing an assignment of all its assets to the Assignee.

91.   The Lessee Defendants further defaulted in that they have become generally unable to pay their debts as they come due, as the Lessee Defendants are currently delinquent with their employees, customers, vendors, suppliers, and lenders.

92.   To date, the Lessee Defendants have failed and refused to pay the outstanding Indebtedness due and owing under the Lease Obligations and Security Documents.

93.   Plaintiff has been damaged as a result of the Lessee Defendants' breaches of the Lease Obligations and Security Documents.   Plaintiff is entitled to terminate the Lease Financing Arrangement, recover from the Lessee Defendants all amounts due and accruing under the Lease Obligations and Security Documents to and through the date of payment, including the Indebtedness, any accrued and further interest at the default interest rate set forth in the Lease Obligations and Security Documents, late charges

allowed by the Lease Obligations and Security Documents, and all other fees, costs and expenses allowed by the Lease Obligations and Security Documents, which shall continue to accrue interest, if any, as provided in the Lease Obligations and Security Documents until the Plaintiff has been paid in full.

94.   Pursuant to the Lease Obligations and Security Documents, Plaintiff is also entitled to recover from the Lessee Defendants' its reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment for damages against the Lessee Defendants in the amount of the Indebtedness, plus appropriate interest, fees, and costs, together with such other relief as is just and proper.

**COUNT IV**
**BREACH OF GUARANTY**
**(D. NIKITIN)**

95.    Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 and 87 through 93 above as though fully set forth herein.

96.    Pursuant to the D. Nikitin Guaranty, D. Nikitin personally guaranteed the full and prompt performance of all of the Lessee Defendants' obligations under the Lease Obligations and Security Documents, including the full and prompt payment of all Indebtedness due.

97.    D. Nikitin was obligated to perform under the terms and conditions of the D. Nikitin Guaranty.

98.    To date, D. Nikitin has failed and refused to pay the outstanding

Indebtedness due and owing under the Lease Obligations and Security Documents.

99.     By failing and refusing to pay the outstanding Indebtedness due and owing under the Lease Obligations and Security Documents, after default by the Lessee Defendants, D. Nikitin has breached the D. Nikitin Guaranty.

100.    Plaintiff has been damaged as a result of the D. Nikitin's breach of the D. Nikitin Guaranty.  Plaintiff is entitled to recover from D. Nikitin all amounts due and accruing under the Lease Obligations and Security Documents to and through the date of payment, including the Indebtedness, any accrued and further interest at the default interest rate set forth in the Lease Obligations and Security Documents, late charges allowed by the Lease Obligations and Security Documents, and all other fees, costs and expenses allowed by the Lease Obligations and Security Documents, which shall continue to accrue interest, if any, as provided in the Lease Obligations and Security Documents until the Plaintiff has been paid in full.

101.    Pursuant to the D. Nikitin Guaranty, Plaintiff is also entitled to recover from D. Nikitin its reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment for damages against D. Nikitin in the amount of the Indebtedness, plus appropriate interest, fees, and costs, together with such other relief as is just and proper.

## COUNT V
## BREACH OF GUARANTY
### (S. NIKITIN)

102.    Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 and 87 through 93 above as though fully set forth herein.

103.    Pursuant to the S. Nikitin Guaranty, S. Nikitin personally guaranteed the full and prompt performance of all of the Lessee Defendants' obligations under the Lease Obligations and Security Documents, including the full and prompt payment of all Indebtedness due.

104.    S. Nikitin was obligated to perform under the terms and conditions of the S. Nikitin Guaranty.

105.    To date, S. Nikitin has failed and refused to pay the outstanding Indebtedness due and owing under the Lease Obligations and Security Documents.

106.    By failing and refusing to pay the outstanding Indebtedness due and owing under the Lease Obligations and Security Documents, after default by the Lessee Defendants, S. Nikitin has breached the S. Nikitin Guaranty.

107.    Plaintiff has been damaged as a result of the S. Nikitin's breach of the S. Nikitin Guaranty.  Plaintiff is entitled to recover from S. Nikitin all amounts due and accruing under the Lease Obligations and Security Documents to and through the date of payment, including the Indebtedness, any accrued and further interest at the default interest rate set forth in the Lease Obligations and Security Documents, late charges allowed by the Lease Obligations and Security Documents, and all other fees, costs and

expenses allowed by the Lease Obligations and Security Documents, which shall continue to accrue interest, if any, as provided in the Lease Obligations and Security Documents until the Plaintiff has been paid in full.

108.    Pursuant to the S. Nikitin Guaranty, Plaintiff is also entitled to recover from S. Nikitin its reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment for damages against S. Nikitin in the amount of the Indebtedness, plus appropriate interest, fees, and costs, together with such other relief as is just and proper.

## COUNT VI
## FORECLOSURE OF SECURITY INTERESTS IN PERSONAL PROPERTY
### (LESSEE DEFENDANTS AND LIEN CLAIMANTS)

109.    Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 and 87 through 93 above as though fully set forth herein.

110.    This is an action to foreclose a security interest in personal property in Seminole County, Florida.

111.    The Collateral, as defined *supra* and described in the Lease Obligation and Security Documents, is now owned by the Lessee Defendants.

112.    Due to the events of default by the Lessee Defendants under the Lease Obligation and Security Documents, Plaintiff is entitled to foreclose its interest in the personal property Collateral pursuant to the Lease Obligation and Security Documents and the Financing Statements.

113.   The Assignee may claim some interest in the Collateral in its capacity as assignee of Company 1, but the interests of the Assignee in the personal property Collateral are junior and subordinate to that of Plaintiff.

114.   The Landlord may claim some interest in the Collateral pursuant to its status as landlord for the Lessee Defendants, but the interests of the Landlord in the personal property Collateral are junior and subordinate to that of Plaintiff.

115.   Fifth Third may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against each of the Lessee Defendants, but the interests of Fifth Third in the Collateral are junior and subordinate to that of Plaintiff.

116.   Aegis Business may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against Company 1, Company 2, Company 4, and ICT Investments, but the interests of Aegis Business in the Collateral are junior and subordinate to that of Plaintiff.

117.   APZB Industries may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against Company 1, but the interests of APZB Industries in the Collateral are junior and subordinate to that of Plaintiff.

118.   Carrier may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain

financing statements filed against Company 2, but the interests of Carrier in the Collateral are junior and subordinate to that of Plaintiff.

119. Fanuc Robotics may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against a dissolved entity sharing the same name as, but different from, Company 3, but the interests of Fanuc Robotics in the Collateral are junior and subordinate to that of Plaintiff.

120. Dell may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against a dissolved entity sharing the same name as, but different from, Company 3, but the interests of Dell in the Collateral are junior and subordinate to that of Plaintiff.

121. SG Equipment may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against a dissolved entity sharing the same name as, but different from, Company 3, but the interests of SG Equipment in the Collateral are junior and subordinate to that of Plaintiff.

122. Suniva may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against Company 4, but the interests of Suniva in the Collateral are junior and subordinate to that of Plaintiff.

123.    Wanxiang may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against Company 2 and Company 4, but the interests of Wanxiang in the Collateral are junior and subordinate to that of Plaintiff.

124.    ICT Investments may claim some interest in the Collateral described in the Lease Obligation and Security Documents and the Financing Statements pursuant to certain financing statements filed against Company 1, Company 2, and Company 4, but the interests of ICT Investments in the Collateral are junior and subordinate to that of Plaintiff.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment foreclosing its security interest in the personal property Collateral described in the Lease Obligation and Security Documents and the Financing Statements, and for such other relief as is just and proper.

**COUNT VII**
**REPLEVIN, DETINUE, AND JUDGMENT OF POSSESSION**
**(LESSEE DEFENDANTS, GUARANTORS, AND LANDLORD)**

125.    Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 71 and 87 through 93 above as though fully set forth herein.

126.    This is an action to recover possession of the Leased Property and the Collateral, which are located in Seminole County, Florida.

127.    Plaintiff is the owner of the Leased Property and has a first priority security interest in the Collateral.

128.   To the Plaintiff's best knowledge, information, and belief, the value of the Leased Property and Collateral is $5,000,000.00, as evidenced by the Appraisals.   It appears, however, that the Lessee Defendants inflated these valuations, that certain of the inventory is of less quality than represented, and that certain assets are missing.

129.   To the Plaintiff's best knowledge, information, and belief, the Leased Property and Collateral are located at the Lessee Defendants' business premises, 400 Rinehart Road, Suite 1000, Lake Mary, Florida.

130.   The Lessee Defendants, the Guarantors, and the Landlord presently have custody, possession, and control of the Leased Property and the Collateral.

131.   The property is wrongfully detained by the Lessee Defendants, the Guarantors, and the Landlord, who came into possession of the Leased Property and Collateral on account of the Lease Financing Arrangement and on account of the Lessee Defendants' relationship with the Landlord.   To Plaintiff's best knowledge, information, and belief, the Leased Property and Collateral is being detained and liquidated for the benefit of parties other than the Plaintiff.

132.   The Leased Property and the Collateral have not been taken for any tax, assessment, or fine pursuant to law.

133.   The Leased Property and the Collateral have not been taken under an execution or attachment against Plaintiff's property.

134.   The Lease Obligation and Security Documents expressly provide that, upon default, Plaintiff may require the Lessee Defendants to deliver all or any portion of the Leased Property or Collateral, may require the Lessee Defendants to assemble the Leased

Property and Collateral and make it available to Plaintiff at a place to be designated by Plaintiff, may require the Lessee Defendants to store the Leased Property and Collateral on their premises at no expense, and must permit Plaintiff full power to enter upon the property of the Lessee Defendants to take possession of and remove the Leased Property and Collateral.

135.   Plaintiff hereby demands that the Lessee Defendants assemble the Leased Property and the Collateral and make it available to Plaintiff and any prospective purchasers designated by Plaintiff at the Lessee Defendants' business premises either for removal, segregation, inspection, use by an appointed receiver, or non-judicial foreclosure sale.

136.   Plaintiff has been damaged by the Lessee Defendants' unlawful possession of the Leased Property and Collateral as it has been dissipated during its wrongful detention.

137.   If Lessee Defendants fail or refuse to assemble and make available the Leased Property and the Collateral to Plaintiff or its designated prospective purchaser, Plaintiff seeks a Writ of Possession pursuant to Section 78.01, *et. seq., Florida Statutes,* or pursuant to any other applicable statutes, in order to obtain possession of such property.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for possession of the Leased Property and Collateral, a preliminary and permanent injunction as requested in Count II *supra,* for damages for the wrongful detention of the Leased

Property and Collateral, for attorney's fees and costs, and for such other and further relief

as is just and proper.

Dated this 22nd day of April, 2013.

Respectfully submitted,

By: *[signature]*
Eric S. Golden, Esq. – Trial Counsel
Florida Bar No. 0146846
Michael A. Nardella, Esq. – Trial Counsel
Florida Bar No. 51265
**Burr & Forman, LLP**
200 South Orange Avenue, Suite 800
Orlando, Florida  32801
Phone:  (407) 540-6600
Fax: (407) 540-6601
E-mail: egolden@burr.com
        mnardella@burr.com

**ATTORNEYS FOR SUNTRUST
EQUIPMENT FINANCE AND
LEASING CORP.**

## VERIFICATION

STATE OF GEORGIA
COUNTY OF FULTON

Before me, the undersigned authority, duly authorized to administer oaths and take acknowledgments, personally appeared William W. Teegarden, who, after being first duly sworn, deposes and says that he is vice president for the Plaintiff, SunTrust Equipment Finance and Leasing Corp., and that in such capacity, he has authority to make this verification on behalf of Plaintiff; that the affiant, in his capacity as vice president, has access to and control over the books and records kept and maintained by Plaintiff in regard to the contracts described in this Verified Complaint; that the affiant has read the foregoing Verified Complaint and states that the facts and matters alleged and contained therein are true and correct; and that the affiant has made this affidavit either upon his own personal knowledge of the facts involved or based upon the books and records customarily kept and maintained by Plaintiff in regard to the contracts entered into by Plaintiff, as alleged in the Verified Complaint.

_____
AFFIANT – WILLIAM W. TEEGARDEN


STATE OF GEORGIA          )
                          ) ss:
COUNTY OF FULTON          )

The foregoing instrument was sworn to and subscribed before me this _15_ day of April, 2013, by William W. Teegarden, as vice president of Plaintiff.  He is personally known to me or has produced _____ (type of identification) as identification.

_____
NOTARY PUBLIC, STATE OF _Georgia_

_Lisa K Terry_
(Print, Type or Stamp Commissioned Name of Notary Public)

LISA K TERRY
NOTARY PUBLIC
Paulding County - State of Georgia
My Comm. Expires July 22, 2013

1896445 v2