IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE AND LEASING CORP., | ) ) ) | |
| Plaintiff, | ) | CASE NO. 6:13-cv-00657-JA-KRS |
| vs. | ) ) | |
| BLUECHIP POWER, LLC, f/k/a BLUECHIP ENERGY, LLC; BLUECHIP ENERGY, LLC, f/k/a COMPLETE ELECTRIC CONTRACTORS, LLC; ADVANCED SOLAR PHOTONICS, LLC; LASER PHOTONICS, LLC, f/k/a C3 LASER, LLC; ICT INVESTMENTS, LLC; US INVESTING CORPORATION; DEMITRI NIKITIN a/k/a DIMITRI NIKITIN a/k/a DMITRI NIKITIN; SVETLANA NIKITIN a/k/a SVETLANA NIKITINA; FIFTH THIRD BANK; AEGIS BUSINESS CREDIT, LLC; ON DECK  CAPITAL, INC.; NEWLOGIC BUSINESS LOANS, INC., d/b/a APZB INDUSTRIES; JEFFERY L. CARRIER as trustee for the JEFFERY L. CARRIER REVOCABLE TRUST; FANUC ROBOTICS AMERICA CORPORATION f/k/a FANUC ROBOTICS AMERICA, INC.; SG EQUIPMENT FINANCE USA CORP.; SUNIVA, INC.; WANXIANG AMERICA CORP.;  RINEHART DEVELOPMENT AND INVESTMENT GROUP, LLC; and MICHAEL E. MOECKER as assignee for BLUECHIP ENERGY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## ORDER APPOINTING RECEIVER AND
## GRANTING PRELIMINARY INJUNCTIVE RELIEF

This matter came before the Court for hearing on May 21, 2013, on Plaintiff's *Verified Motion for Appointment of a Receiver with Incorporated Memorandum of Law* (Dkt. No. 2) (the **"Receiver Motion"**), Plaintiff's *Motion for Preliminary Injunction with Incorporated Memorandum of Law* (Dkt. No. 3)(the **"Injunction Motion,"** and together with the Receiver Motion, the **"Motions"**), and the *Verified Complaint for Monetary Judgment, Petition for Appointment of Receiver, Replevin, Foreclosure, and Injunctive Relief* (the **"Complaint"**)(Dkt. No. 1) filed by Plaintiff SunTrust Equipment Finance and Leasing, Corp. (**"Plaintiff"**).   The Court, having considered the Motions, the Complaint, and the record, having heard the arguments of counsel, and having acknowledged the agreement of the parties to the form of this Order and to the relief requested in the Motions, the Court hereby makes the following findings of fact and conclusions of law:

### Findings of Fact and Conclusions of Law

A.    Plaintiff extended certain financial accommodations to BlueChip Energy, LLC, BlueChip Power, LLC, Advanced Solar Photonics, LLC, Laser Photonics, LLC, ICT Investments, LLC, and US Investing Corp. (collectively, the **"Lessee Defendants"**) that are evidenced by, among other documents, that certain Equipment Lease Agreement No. 08830, together with that certain Rider No. 1, Rider No. 2, Rider No. 3, Rider No. 4, and Rider No. 5 dated December 10, 2012 (the **"Lease Agreement,"** and together with all other schedules, appraisals, security agreements, and other documents relating to the Lease Agreement, the **"Lease Documents"**).   Defendants Demitri Nikitin and Svetalana Nikitin are the ultimate principals of the Lessee Defendants and separately guaranteed the indebtedness and obligations owed by the Lessee Defendants to Plaintiff (the **"Guarantors"**).

B.      On April 19, 2013, BlueChip Energy, LLC, filed a petition for the assignment for the benefit of creditors in the Circuit Court in and for Seminole County, Florida Case No. 2013-CA-001769, and executed an assignment of all its assets and interests to Defendant Michael E. Moecker, in his capacity as assignee for BlueChip Energy, LLC (the "**Assignee**," and together with the Lessee Defendants, the "**Lessee Defendants**" to the extent any allegations relate to conduct or relief of the Lessee Defendants occurring after April 19, 2013).

C.      As of April 23, 2013, the outstanding indebtedness owed to Plaintiff under the Lease Documents collectively exceeded $5 million (together with all interest, attorney's fees, costs, and other possible fees and expenses payable thereunder, the "**Indebtedness**").   The Indebtedness is secured by a properly perfected, first priority security interest and lien in favor of Plaintiff upon substantially all of the Lessee Defendants' assets which are further defined and listed in **Exhibit "A"** attached hereto and incorporated herein by references, and which includes the Lessee Defendants' accounts, inventory, equipment, software, patents, and the proceeds and products thereof (as more particularly defined in the Lease Documents and the attached Exhibit "A", the "**Leased Property and Collateral**").

D.      The Lessee Defendants were engaged in the manufacture, installation, and sale of solar power generation equipment, among other activities.   For various reasons, the Lessee Defendants have experienced serious financial problems, including the lack of available cash to continue normal business operations as a going concern.

E.      The Lessee Defendants have breached or otherwise defaulted under the Lease Agreement as described in the Receiver Motion and in the Verified Complaint by, among other defaults, failing to make payments as and when due under the Lease Agreement, and Plaintiff is

entitled to exercise its rights and remedies under the Lease Documents and applicable law as a consequence of such defaults.  Plaintiff is likely to succeed on the merits.

F.       As a result of the Lessee Defendants' default(s) and business decline, there is a serious threat and potential imminent danger and dissipation to Plaintiff's interests in the Leased Property and Collateral and the value thereof, all of which may be irreparably diminished and harmed absent the relief requested by Plaintiff in the Motions.

G.       The Court has proper jurisdiction and venue over this action, and adequate notice of the Motions has been provided to the Lessee Defendants and the Guarantors.

H.       Plaintiff has no adequate remedy at law to prevent potential irreparable harm and injury to its Leased Property and Collateral and rights under the Lease Documents, and just cause exists for granting to Plaintiff the relief contained in this Order.

I.       The potential hardship to the Lessee Defendants is outweighed by the risk to Plaintiff if the relief in this Order is not granted.

J.       Public interest is not implicated by this Order as it is a private commercial contract and the public is served by the enforcement of contractual obligations.

K.       Lessee Defendant BlueChip Power, LLC, a Florida limited liability company, formerly known as BlueChip Energy, LLC, a Florida limited liability company, is the owner of those certain parcels of real property located in Lake County, Florida, more particularly described in **Exhibit "B"** attached hereto and made a part hereof (the "**Carrier Real Property**"), and certain personal property described in the Carrier Mortgage (defined below) relating to the Real Property (collectively the "**Carrier Personal Property**").  On or about

March 4, 2011, Defendant BlueChip Energy, LLC, now known as BlueChip Power, LLC, executed and delivered: (a) a Mortgage, Security Agreement, and Assignment of Rents (the "**Carrier Mortgage**") to Defendant Jeffery L. Carrier as Trustee of the Jeffery L. Carrier Revocable Trust, dated February 6, 2001, as amended ("**Carrier**"), which was recorded in Official Records Book 04010, Pages 1128-1145, of the Public Records of Lake County, Florida, on March 9, 2011, and (b) two UCC-1 Financing Statements which were recorded in Official Records Book 04010, Pages 1146, of the Public Records of Lake County, Florida on March 9, 2011, and under File Number 201104188676 in the Florida Secured Transaction Registry (collectively the "**Carrier UCC-1s**"). The Carrier Mortgage and Carrier UCC-1s were issued as collateral security for a loan made by Carrier to BlueChip Energy, LLC (now BlueChip Power, LLC) in the principal amount of $805,0000.00 ("**Carrier Loan**"), and evidenced by Mortgage Note dated March 4, 2011, as subsequently amended ("**Carrier Note**"). In connection with the Carrier Note, the Defendants ICT Investments, LLC, Advanced Solar Photonics, LLC, Demitri G. Nikitin, and Svetlana M. Nikitina (collectively the "**Carrier Loan Guarantors**") each and delivered an Unconditional and Continuing Guaranty ("**Carrier Guaranty**")(the Carrier Mortgage, Carrier UCC-1s, Carrier Note, Carrier Guaranty, and any other documents executed and delivered by BlueChip and the Carrier Loan Guarantors under the Carrier Loan are hereinafter collectively referred to as the "**Carrier Loan Documents**").

ACCORDINGLY IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.      The Receiver Motion is GRANTED on the terms and conditions set forth herein.

2.      The Injunction Motion is GRANTED on the terms and conditions set forth herein.

3.      *Appointment of Receiver.*  Michael E. Moecker of Moecker & Associates, Inc. is
hereby appointed receiver for the Lessee Defendants (the **"Receiver"**), without bond, to take
possession, control, and charge of the Leased Property and Collateral and all other possible
property and assets of the Lessee Defendants (collectively, the **"Receivership Estate"**).  Except
as may be otherwise provided herein, no officer, director, shareholder, agent, assign, or
employee of the Lessee Defendants, no creditor of the Lessee Defendants, and no other person
shall have any authority or control over the Receivership Estate.   The Receivership Estate shall
include all of the property identified in attached Exhibit "A" and Lessee Defendants' interests or
rights in the following property (whether or not such property constitutes the Leased Property
and Collateral):

>          (i)      all accounts, including accounts receivable, deposit
> accounts, choses in action, promissory notes, insurance policies, and other rights
> to payment;

>          (ii)     all goods and inventory, including finished goods, work-in-
> process, raw materials and supplies;

>          (iii)    all fixtures, machinery, equipment, vehicles, furniture and
> other tangible personal property;

>          (iv)     all intellectual property, including copyrights, trademarks,
> patents and patent applications, licenses, and royalties;

>          (v)      all electronic or computer property, including electronic
> software, programs, and source codes;

>          (vi)     all leasehold interests as lessee or tenant under leases for
> any machinery, equipment, or personal property used in the Lessee Defendants'

business operations or any real estate where the assets of the Receivership Estate are located; provided, however, the Receiver shall not be deemed by this order to have assumed any such leases;

(vii)   all cash, rents, income and other revenues, or profits generated from the sale or disposition of the Receivership Estate;

(viii)   all claims and causes of action;

(ix)   all business records, whether electronic or otherwise, including books of account, ledgers, customer lists, logs, journals, and similar items related to operation or maintenance of Lessee Defendants' business; and

(x)   All keys, security access cards and codes to buildings, safes and deposit boxes where Receivership Assets are located.

4.   *Receiver's Powers, Generally.*  The Receiver shall have and possess all powers, rights, privileges, and prerogatives necessary to protect, safeguard, and manage the Receivership Estate.   Subject to any other specific provisions in this Order, the Receiver's powers shall include, but are not necessarily limited to, the authority to take the following actions:

(a)   Take immediate possession and control of the Receivership Estate, including but not limited to all, machinery, equipment, furniture, fixtures, inventory, accounts, deposit accounts, utility deposits, other deposits, franchises, patents, trademarks, copyrights, and any other intellectual property, rights, privileges, or effects, books, records, accounting records, federal, state and local tax returns, securities, mortgages, stocks, bonds, debentures, computers, computer disks, bank statements, checks, and all real property and leasehold interests of the Lessee Defendants wherever situated, and to administer such assets and property as is directed to comply with the

directions contained in this Order, and to hold all assets and property pending further Order of this Court;

(b)      Enter upon, gain access to, and take possession of the Lessee Defendants' assets and property to use, operate, manage, control, preserve, protect, maintain, market and/or sell or liquidate, and to take such actions as are necessary to secure the Lessee-Defendants' assets and property, including changing the locks, security codes, or other access procedures to the subject premises if deemed necessary by the Receiver in his discretion;

(c)      Assume control of and be named as authorized signatory for all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Lessee Defendants, and upon Order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

(d)      Receive all income and profits from the use, operation, collection, sale, lease or other disposition of the Lessee Defendants' assets and property; to care for, preserve, protect, secure and maintain the Lessee Defendants' assets and property, until they are sold and to incur the reasonable expenses necessary for such care, preservation, and maintenance;

(e)      Demand, collect, and receive all revenues, income, and profits currently in the possession, custody, or control of the Guarantors or now due and hereafter coming due from the operation of the Lessee Defendants, and to keep the Lessee Defendants' assets and property insured and in good repair, provided, however, that notwithstanding

any other provisions of this Order, nothing herein shall compel the receiver to use his own funds to do any of the foregoing;

(f)    Access and take possession of any monies and funds on deposit in any banks and/or savings and loan associations or any other financial institution or brokerage houses  in the name of the Lessee Defendants, and the Receiver's receipt of said monies and funds shall discharge said banks and/or savings and loan associations from further responsibility for accounting to the Lessee Defendants for monies and funds for which the Receiver shall give his receipt;

(g)    Take possession of all the books and records pertaining to the Lessee Defendants and the Lessee Defendants' assets and property, wherever located, as the Receiver deems necessary for the proper administration, management and/or control of the receivership and the Receivership Estate, but the books and records shall be made available to the Lessee Defendants, the Guarantors, the Lessee Defendants' creditors including Plaintiff and Carrier, and their counsel upon request; and to receive, open, read, and respond to all mail addressed to the Lessee Defendants or Guarantors, with the exception of correspondence addressed to the Guarantors by their counsel;

(h)    Negotiate and enter into contracts that are necessary or incidental to preserving, protecting, managing and/or controlling the Lessee Defendants and the Lessee Defendants' assets or property;

(i)    Remit sale/liquidation proceeds to Plaintiff and cooperate with Plaintiff and/or other lien-claimants in the non-judicial sale of any Leased Property or Collateral, and remit to Plaintiff any of the proceeds from the sale of, or the collection of, the Lessee Defendants' accounts receivable;

(j)     Establish bank accounts for the deposit of monies and funds collected and received in connection with the operation of Lessee Defendants and administration of the Receivership Estate and to transfer all monies and funds on deposit in the name of the Lessee Defendants upon the entry of this order into such accounts; provided that any funds on deposit are insured up to customary limits by an agency of the United States of America;

(k)     Institute ancillary proceedings in this state or other states or countries as are necessary to preserve and protect any of the Lessee Defendants' assets or property;

(l)     Depose any officer, agent, or shareholder of the Lessee Defendants;

(m)     Determine the value of the Lessee Defendants and the Receivership Estate, to receive and evaluate purchase offers for any of the Lessee Defendants' assets and property, to sell with the consent of Plaintiff all right, title, and interest of the Lessee Defendants in any of the Leased Property and Collateral, either in individual lots or in bulk sales, and either through private transactions or public auctions, subject to the terms herein, and to sell any other assets or property of the Receivership Estate subject to the terms herein;

(n)     Ensure adequate utility services are provided to the Receivership Estate to the extent required and subject to the availability of funds to pay for such utility services;

(o)     Contract and pay for hazard, fire, and liability insurance for the Receivership Estate in the event it is not adequately insured, and instruct any insurers to name Receiver and/or Plaintiff on existing policies as additional insureds and to name Plaintiff as primary loss payee (with no responsibility for payment of premiums) for insurance policies on the Leased Property and Collateral;

(p)     Manage and operate the Lessee Defendants' business in order to maximize the recovery of the Receivership Estate according to the Receiver's best business judgment;

(q)     Continue or terminate the employment of any of the Lessee Defendants' employees, to enter into new or modified arrangements with employees or independent contractors as necessary or prudent to manage the Receivership Estate and carry out the Receiver's duties;

(r)     Continue business operations of the Lessee Defendants as needed to complete existing or new purchase orders or to liquidate the Receivership Estate's inventory of finished goods, works in progress, raw materials, supplies, and other similar assets;

(s)     Collect the accounts receivable that comprise part of the Receivership Estate, including sending invoices and statements on the Lessee Defendants' customary forms, hiring collection agencies, and initiating collection lawsuits in the appropriate account in the Lessee Defendants' names;

(t)     Perform, renew, cancel, negotiate, terminate, or otherwise adjust any pending real estate lease agreements relating to the Receivership Estate to which Defendants are a party, or to enter into new contracts as Receiver for Defendants in order to control, manage, and operate the Receivership Estate; provided, the Receiver shall not enter into new contracts outside the ordinary course of business of operating the Receivership Estate except as needed to make emergency repairs or except as needed to provide for the sale and liquidation of the Receivership Estate;

(u)     Pay any taxes, charges, assessments and similar items affecting the Receivership Estate that are already or hereafter incurred, and to prepare and file any tax returns required for the assets or operation of the Receivership Estate;

(v)     Initiate, pursue, resist, defend, or intervene in all suits, actions, claims, liens, and demands which involve the Receivership Estate;

(w)     Abandon any property of the Receivership Estate that are burdensome and of inconsequential value in the Receiver's business judgment;

(x)     Engage and employ others without prior court approval as deemed reasonably necessary by the Receiver to manage, preserve, and operate the Receivership Estate in the ordinary course of business, including but not limited to attorneys, accountants, and contractors;

(y)     Engage and employ others without prior court approval as deemed reasonably necessary by the Receiver to sell or liquidate the Receivership Estate, whether or not in the ordinary course of business, including but not limited to auctioneers, appraisers, liquidators, advertisers, sales consultants, and brokers, provided, however, that the employment of any such persons shall be subject to the express, prior, written consent of the Plaintiff;

(z)     Pay the reasonable fees and expenses of any professional consultants as and similar experts engaged by the Receiver as and when they come due in accordance with other provisions of this Order;

(aa)    Do any and all other acts which could be carried out lawfully by a corporation in the State of Florida where said acts are necessary for the carrying out of the final settlement of the unfinished business of the Lessee Defendants and the winding

down of their affairs to marshal, transport, and assemble the Receivership Estate as necessary to maintain, preserve, or liquidate the same provided such act is consistent with the above; and

      (bb)    Take such other action as may be approved by this Court.

    5.    *Receiver's Authority to Receive Advances of Funds.*  To enable the Receiver to operate, manage, and liquidate the Receivership Estate, including operating the Lessee Defendants business and paying the normal expenses thereof, and to otherwise fund the disbursements and payments as contemplated and authorized herein, the Receiver is authorized, but not required, to receive advances of money from Plaintiff (the **"Advances"**).  Plaintiff shall make an initial Advance of $20,000.00 immediately upon entry of this Order to fund necessary costs and expenses of operating the Receivership Estate, including but not limited to payment of insurance, employee wages, independent contractor invoices, and professional expenses; and provided, further, that, subject to agreement between the Receiver and Plaintiff on a Budget as further described in paragraph 13 below, the Receiver shall be entitled to a carve-out from Plaintiff's lien on the Leased Property and Collateral in an amount of $50,000.00 to pay the actual costs and expenses incurred by the Receiver while operating the Receivership Estate, including any professional expenses; and provided, further, that any payments to the Receiver or any professionals shall be subject to paragraph 12.  Any additional Advances shall be made in Plaintiff's absolute and sole discretion, and nothing contained in this Order shall create any duty or obligation upon Plaintiff to make any Advances whatsoever.  All Advances shall be deemed payments made under the Lease Documents to protect, preserve, and manage the Receivership Estate, shall constitute part of the Indebtedness owed under the Lease Agreement, and shall be secured by a first priority security interest in and liens upon the Receivership Estate without the

necessity of filing or recording any documents, except no such security interest or lien will attach to the Carrier Real Property and the Carrier Personal Property to the extent that Carrier holds a valid, first-priority security interest or to any property encumbered by Fifth Third Bank which is not included in Exhibit "A" to the extent Fifth Third Bank holds a valid, first-priority security interest.

6.      *Sale of Assets.*   Notwithstanding any possible provisions to the contrary in this Order, the Receiver shall not be authorized to sell or lease any part of Plaintiff's Leased Property and Collateral without the prior express consent of Plaintiff to be determined according to Plaintiff's sole and absolute discretion, including the manner, method, and terms of sale or lease. In connection with any sale or auction of the Leased Property and Collateral, the right of Plaintiff to credit bid shall be preserved, and the Defendants in this action shall be deemed to have waived any notice otherwise required to be given to them under the Uniform Commercial Code or any similar laws requiring the delivery of notice with respect to the sale or disposition of collateral, provided that, prior to any sale of property of the Receivership Estate, the Receiver will issue at least five (5) day's written notice of any proposed sale to Fifth Third Bank which notice is deemed sufficient upon email to Todd K. Norman, tnorman@broadandcassel.com, and to Roy S. Kobert, rkobert@broadandcassel.com and which is clearly entitled "BLUECHIP – NOTICE OF PROPOSED SALE." Fifth Third Bank shall have five (5) days in which to reply with an objection to the sale. If Fifth Third Bank does not timely object, the Receiver may conclude the sale and remit any funds pursuant to this Order. If Fifth Third Bank objects, the objection must include instructions to the Receiver to either (a) conclude the sale but keep any proceeds in escrow pending agreement with Plaintiff or order of this Court, or (b) postpone the sale pending determination of this Court, except, however, that any public auction scheduled, advertised, and

14

noticed by the Receiver shall not be postponed, but upon timely objection of Fifth Third Bank to the sale of any specific collateral, those specific proceeds will be held by the Receiver in escrow pending agreement of the Plaintiff or order of this Court. Subject to this provision, the Receiver is allowed to market and sell the assets of the Receivership Estate free and clear of all liens and encumbrances, with such liens and encumbrances to attach to the sales proceeds in the same validity, order, extent, and priority as existed immediately prior to such sale or disposition, provided, however, that the Receiver may sell the Carrier Real Property only if the sale provides for payment in full to Carrier such as is necessary to satisfy the Carrier Mortgage, or pursuant to the written consent of Carrier.

7.  *Priority of Liens.* Except as provided in this Order with respect to Advances and the liens securing such Advances, nothing in this Order shall alter the priority of any liens or security interests in the Receivership Estate, all of which shall be determined in accordance with applicable law.

8.  *Turnover of Receivership Property.* The Lessee Defendants, including their respective officers, agents, representatives or affiliated companies, and the Guarantors, are hereby restrained and enjoined from disposing, transferring, exchanging, assigning or in any way conveying the Receivership Estate or any portion thereof, and taking any action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties, and the Lessee Defendants and the Guarantors are hereby ordered to turn over to the Receiver the possession of the Receivership Estate's assets, including

    (a)   all cash,

    (b)   all relevant business and financial records, including lists of accounts payable,

(c)     all keys and access cards to buildings, safes, and deposit boxes where the Receivership Assets are located,

(d)     lists of customer deposits,

(e)     all outstanding purchase order and bids for contractor work,

(f)     all documents identifying pending litigation,

(g)     all programs or source codes needed to access any electronic data comprising part of the Receivership Estate, and

(h)     such other records pertaining to the operation of the Lessee Defendants' business and the Receivership Estate as the Receiver requests.

9.     *Injunction As to Lessee Defendants and Guarantors.* Upon the entry of this Order and for so long as that the Receiver is managing the Receivership Estate pursuant to the jurisdiction of this Court, and absent the entry of a separate order by this Court granting express permission or relief to take the actions that are otherwise enjoined by this Order, the Lessee Defendants and the Guarantors are hereby **ENJOINED AND STAYED** from taking the following actions:

(a)     Withdrawing, collecting, paying, or otherwise transferring any funds derived from operation or use of the Leased Property or Collateral except to the Receiver or to the Plaintiff;

(b)     Removing any of the Leased Property or Collateral located at the Lessee Defendants' offices and warehouses;

(c)     Placing the Leased Property and Collateral in danger of destruction;

(d)     Concealing the Leased Property and Collateral;

(e)     Selling the Leased Property or Collateral whether to an innocent purchaser or any other person;

(f)     Removing, destroying, concealing, or refusing to turn over to an appointed receiver any of the documents or electronic data relating to the Leased Property or Collateral;

(g)     Taking any action with respect to the Leased Property or Collateral without the express written consent of the Receiver or the Plaintiff; and

(h)     Further encumbering the Leased Property or Collateral.

10.     *Injunction As to Creditors and Third Parties.*   Upon the entry of this Order and for so long as that the Receiver is managing the Receivership Estate pursuant to the jurisdiction of this Court, and absent the entry of a separate order by this Court granting express permission or relief to take the actions that are otherwise enjoined by this Order, all creditors of the Lessee Defendants and other third parties receiving notice of this Order are hereby **ENJOINED AND STAYED** from taking any action seeking to recover money damages or other relief against the Lessee Defendants or the Receivership Estate, including filing any collection lawsuits, garnishments, writs of possession, eviction proceedings, or acts of replevin, and such persons are further **ENJOINED** from (a) disposing, transferring, exchanging, assigning or in any way conveying the Receivership Estate or any portion thereof, and (b) taking any action, directly or indirectly, to hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties. This provision shall not apply to Plaintiff or to any government authority seeking to exercise its police powers to protect the public health or safety. Furthermore, nothing in this provision or this Order shall operate to prevent Carrier from exercising its right of foreclosure against the Carrier Real Property, to schedule and hold a foreclosure sale of the Carrier Real

Property, to establish any deficiency amounts due by any of the Lessee Defendants and the Carrier Loan Guarantors, and to collect against the Carrier Loan Guarantors, all without the prior consent or approval of the Plaintiff, the Court, or any other party. Furthermore, nothing in this provision or this Order shall operate to prevent Fifth Third Bank from exercising its rights against Defendants Demitri Nikitin and Svetlana Nikitin, or any persons or entities other than the Lessee Defendants, in its pending action in the Circuit Court in and for the Eighteenth Judicial Circuit, Seminole County, Florida, Case No. 2012-CA-004846, nor to prevent Fifth Third Bank from exercising its remedies in that proceeding or otherwise against any property in which Fifth Third has a security interest but which is not the Leased Property and Collateral. To the extent that Fifth Third Bank inadvertently comes into possession of property which is a part of the Leased Property and Collateral, Fifth Third Bank will turn such property over to the Receiver within a reasonable time.

11.     *Compensation.* The Receiver shall be paid for his services on the following fee and commission schedule: (a) <u>Property Management Services</u>: a reasonable hourly fee for his property management and accounting and reporting services to be paid on the fifth day of each month for the preceding month's services; (b) <u>Expenses</u>: the reimbursement of its reasonable out-of-pocket expenses actually incurred by the Receiver, which will be reimbursed at the end of each month. Such fees shall be paid from revenues remaining, if any, after payment of the normal, ordinary and necessary operating expenses of the Receivership Estate. If the revenues are not sufficient to cover the Receiver's fees, such fees may be paid by an Advance from Plaintiff. The Receiver shall not be required to give bond conditioned for the faithful discharge of its duties unless and until cause therefore is shown.

12.   *Procedure for Compensation.*   Prior to paying the invoices of the Receiver or any licensed professionals or expert consultants engaged by the Receiver, such as attorneys and accountants, the Receiver shall serve a notice summarizing the amount of the invoices to be paid to counsel for Plaintiff and to any other party requesting written notice in this action, each of whom shall have ten (10) days after the delivery of such notice to provide to the Receiver any written objections they have to payment of such invoice(s), and if a written objection is timely made, then the Receiver shall not pay such invoices except upon written consent of the objecting party or further order of this Court.

13.   *Budget.*   On or before thirty (30) days after the entry of this Order by this Court (the **"Budget Deadline"**), the Receiver shall furnish to Plaintiff a detailed, projected, monthly operating budget for the Receivership Estate that shall be subject to the written approval of Plaintiff (as approved, and as may be amended from time to time, the **"Budget"**). Plaintiff will advise the Receiver in writing within ten (10) business days of receipt of the Budget, or any amendment thereof, whether Plaintiff approves or disapproves the Budget, or any amendment thereof.

14.   *Remittance to Plaintiff.*   On or before the 15th day of each month, the Receiver shall pay to Plaintiff all receipts, except receipts or rents for any sale or lease or other transfer of or related to the Carrier Real Property, remaining, if any, after payment of the fees and expenses of the Receiver and the Receivership Estate (subject to the other provisions of this Order), to be applied to the Indebtedness of the Lessee Defendants to Plaintiff in Plaintiff's discretion. In the event any creditor of the Lessee Defendants or other party asserts any claim or interest to such monies or income which such party contends is superior to the secured claim and security interest of Plaintiff in such funds, then the Receiver shall withhold the disbursement of such

monies until such dispute is resolved by the written consent of such parties or by further order of this Court

16.   *Status Reports / Status Hearings.*   The Receiver shall provide to Plaintiff and Fifth Third Bank weekly reports (or such other frequency as Plaintiff may agree) of the Receiver's management and disposition of the Receivership Estate, including cash receipts and disbursement.   Within twenty (20) days hereafter, the Receiver shall file with the Court and serve upon all parties to this proceeding a written report (a "**Status Report**") with respect to the performance of his duties as Receiver and setting forth (a) a summary of the material actions taken by the Receiver in connection with his control, management and liquidation of the Receivership Estate,  (b) a summary itemization of the monies received and disbursed by the Receiver, and (c) a summary of the Receiver's plans and projections for the disposition of the remaining Receivership Estate and the closing of this Receivership.   Thereafter, the Receiver shall file similar Status Reports with the Court on a quarterly basis unless otherwise directed by the Court.   The Court may schedule hearings from time to hearing to receive updates and status reports from the Receiver on the progress of this proceeding and to address any disputes, issues and other matters pertaining to the receivership created by this Order.

16.   *No Ratification.*   Nothing in this Order shall be deemed to constitute an acceptance or ratification by the Receiver of any contracts or leases with third parties currently existing, and nothing in this Order shall be deemed to affect in any way the enforceability or priority of Plaintiff's rights, remedies, security interests, and liens under applicable law or the Lease Documents.

17.   *Plaintiff's Access to Leased Property and Collateral / No Control or Successor Liability.*   Plaintiff and Fifth Third Bank shall be authorized to inspect the Leased Property and

Collateral and the related books and records, to make copies of the documents or data relating thereto, and to confer with the Receiver and his agents with respect to the status of the Receiver's management and liquidation of the Receivership Estate. Nothing in this Order shall be construed as causing or deeming Plaintiff to be in possession or control of any of the Receivership Estate, or to have exerted any authority with respect to the management, operation, protection or maintenance of the Receivership Estate; nor shall Plaintiff be deemed to have assumed any obligations, liabilities, or debts of the Lessee Defendants or the Receiver with respect to any third parties.    This Order shall not cause Plaintiff to be deemed the successor to the Lessee Defendants or create any successor liability upon Plaintiff; nor shall this Order cause Plaintiff to be deemed the employer of any current or former employees of the Lessee Defendants nor otherwise create any obligation upon Plaintiff to pay wages, severance pay, benefits, or any other payment to the Lessee Defendants' employees or to provide any notices to the Lessee Defendants' employees that the Lessee Defendants may be required to deliver under any applicable state or federal law.

18.    *Foreclosure of Collateral.*    Nothing in this Order shall prohibit Plaintiff from exercising its legal and contractual remedies to foreclose, judicially or non-judicially, upon all or a portion of the Leased Property and Collateral, including collection of the accounts receivable. Upon any foreclosure by Plaintiff, the Receiver and the Lessee Defendants shall cooperate with Plaintiff and any third party purchaser of the Leased Property Collateral at foreclosure by turning over control and possession of such Leased Property and Collateral for inspection and disposition.

19.    *Special Provisions As to Carrier.*  Notwithstanding any other terms or provisions of this Order, the Court specially finds and holds that: (i) Carrier's mortgage lien on the Carrier

Mortgage shall not be primed or subordinated to any lien on the Carrier Real Property for any fees and expenses or other costs, or other advances, of or concerning the Receivership; (ii) the Receiver shall have no authority to sell the Carrier Real Property subject to the Carrier's Mortgage unless all sums due Carrier and secured under the Carrier Mortgage are recognized and paid in full in connection with any disposition of the Carrier Real Property; (iii) there shall be no priming lien against the Carrier Real Property, and the lien of the Carrier Mortgage, (iv) Carrier shall be allowed to commence and pursue a judicial action to foreclose the Carrier Mortgage and to seek and establish a deficiency judgment against Lessee Defendant BlueChip Power, LLC, formerly known as BlueChip Energy, LLC, and to seek, establish, enforce, and execute upon a deficiency judgment against the Carrier Loan Guarantors for all sums due on the Carrier Loan Documents, without obtaining any approval or consent from the Plaintiff, the Receiver, or this Court, and Carrier may be allowed to join the Receiver as a party defendant in any mortgage foreclosure action instituted by him for the purpose of foreclosing out any interest in the Carrier Real Property or Carrier Personal Property that the Receiver may have or hold pursuant to this Order, or any other order entered by this Court in this case, and (v) Carrier shall be allowed, upon his obtaining a final judgment of foreclosure in any action, to foreclose the Carrier Mortgage, to proceed to schedule and hold a public foreclosure sale of the Carrier Real Property and Carrier Personal Property, without any approval or consent from the Plaintiff, the Receiver, or the Court.

20. *Special Provisions As to Fifth Third Bank.* Notwithstanding any other terms or provisions of this Order, the Court specially finds and holds that: (i) Fifth Third Bank's security interest in any property which is not Leased Property and Collateral shall not be primed or subordinated to any lien for any fees and expenses or other costs, or other advances, of or

concerning the Receivership; (ii) the Receiver shall have no authority to sell property of the Receivership Estate which is not listed on Exhibit "A" but which is encumbered by a lien of Fifth Third Bank unless Fifth Third Bank is paid pursuant to its priority as to those assets, as to be determined by the Court; (iii) Fifth Third Bank shall be allowed to pursue its judicial action pending in Seminole County, Florida, and to seek, establish, enforce, and execute upon a deficiency judgment for all sums due Fifth Third Bank, without obtaining any approval or consent from the Plaintiff, the Receiver, or this Court, provided that no action is taken foreclosing or executing upon any of the property which is included in Exhibit "A" to the extent Fifth Third Bank holds a valid, first-priority security interest, and (iv) Fifth Third Bank shall be allowed, upon its obtaining a final judgment of foreclosure in any action, to judicially foreclose any property encumbered by Fifth Third which is not included in Exhibit "A" to the extent Fifth Third Bank holds a valid, first-priority security interest and to proceed to schedule and hold a public foreclosure sale of said property, without any approval or consent from the Plaintiff, the Receiver, or the Court.

21.     *Special Provisions As to Rinehart Development and Investment Group, LLC.* Notwithstanding any other terms or provisions of this Order, the Court specially finds and holds that this Order does not enlarge, alter, or modify any of the existing rights between Rinehart Development and Investment Group, LLC (the "**Landlord**"), the Lessee Defendants, and the Receiver including but not limited to those rights existing in the Real Property Waiver dated December 10, 2012, between Plaintiff and the Landlord and in any lease agreement currently existing between the Landlord and Lessee Defendants; that the Landlord is not enjoined from exercising his rights and remedies related to the subject premises; and that neither the Landlord nor the Receiver waive any claims or defenses by or through this Order.

22.     *No Personal Liability of Receiver.*  The Receiver and his agents and attorneys shall have no personal liability for the debts owed by the Lessee Defendants to any third parties, and all creditors of the Lessee Defendants are enjoined from pursuing the Receiver individually for any claims they may have against the Lessee Defendants.     Except for an act of gross negligence or willful misconduct, the Receiver and his agents and attorneys shall not be liable for any loss or damage incurred by the Lessee Defendants or any other person by reason of any act performed or omitted to be performed by him in connection with the discharge of his duties and responsibilities in this matter.

23.     *No Bond Required.*  No bond is required to be posted by the Receiver.

24.     *Miscellaneous.* The Receiver is authorized to record this Order in any court or with any government office and to serve it on any person or entity as he deems appropriate to discharge his duties as Receiver.  Nothing in this Order, however, shall alter or prime, or be deemed to alter or prime, the current priority of any security interests held in the Carrier Real Property and Carrier Personal Property, including the current priority of the Carrier Mortgage.

25.     *Duration of Receivership.*  Except as otherwise provided in this Order, the Receivership shall continue until the further Order of this Court discharging the Receiver and terminating or dissolving the Receivership. The application of this Receivership to the Carrier Real Property shall terminate and dissolve upon the Receiver's receipt of Certificate of Sale from any foreclosure sale of the Carrier Real Property.

26.     *Jurisdiction.*  This Court will retain jurisdiction over this matter for all purposes and will order other and further relief that this Court deems appropriate under the circumstances. The Receiver and any party hereto may, at any time, on proper notice to the parties hereto, apply to this Court for further or other instructions and for further power necessary to enable the

Receiver to properly fulfill the duties hereunder or, for good cause shown, seek dissolution of the Receivership.

SO ORDERED this **22** day of May, 2013.

_____
JUDGE JOHN ANTOON
UNITED STATES DISTRICT COURT

## EXHIBIT "A"

The "Leased Property and Collateral" consists of all of the Lessee Defendants' right, title, and interest in and to all of the following (whether now existing or hereinafter created, and including any other collateral described in any rider to the Lease Documents):

I.      Equipment: All assets described below or otherwise covered in the Lease Documents and further includes all inventory, fixtures or other property comprising the Equipment, together with all related software (embedded therein or otherwise) and general intangibles, all additions, attachments, accessories and accessions thereto whether or not furnished by the Supplier (as defined in the Lease Documents):

> Southeast Equipment Valuation Summary Appraisal Report on Solar Panel Manufacturing Equipment dated: 11/29/2010

> Industrial Asset Appraisals & Consulting, Inc. Summary Appraisal of Specified Manufacturing Equipment dated: 10/18/12

> Industrial Asset Appraisals & Consulting, Inc. Summary Appraisal of Power Generation Equipment dated: 10/18/12

> 3S Modultec XL3622CP, Titan FLS48, Meir ICOLAM 42/24, Komax Xcell X2, FL600, Blackstar PCB, Fantum G4, Inspection Table, LP Frame Press, Gravity Roller Conveyor, Fantom G3, Coherent Libra, ABM-G3, SBM 1200M, Yitterbium 1KW, Yitterbium 2KW, all power generation equipment which includes but is not limited to solar panels, conductors, and inverters (specific equipment covered with the Appraisal)

II.     Other Collateral:

1.      All subleases, chattel paper, accounts, security deposits, and general intangibles relating thereto, and any and all substitutions, replacements or exchanges for any such item of Equipment or other collateral, in each such case in which the Lessee Defendants shall from time to time acquire an interest; and

2.      Any and all insurance and/or other proceeds of the property and other collateral in and against which a security interest is granted hereunder.

The Lease Documents, including the Appraisals referenced therein, all as attached to the Verified Complaint are hereby incorporated by reference into this Order for purposes of defining the Leased Property and Collateral.

EXHIBIT "B"

The "Carrier Real Property" consists of the following parcels described in the Carrier Mortgage:

Legal Description

**Parcel I:**

A portion of Section 13, Township 19 South, Range 27 East, and Section 18, Township 19 South, Range 28 East, Lake County, Florida, being more particularly described as:

Begin at the Southwest corner of Sorrento Hills, Phase 3, as recorded in Plat Book 52, Pages 69 through 78, Public Records of Lake County, Florida; thence run North 89°53'44" East, along the South line of said Plat, a distance of 1327.47 feet to the Southwest corner of Sorrento Hills, Phases 1 and 2, as recorded in Plat Book 48, Pages 4 through 15, Public Records of Lake County, Florida; thence run North 87°49'27" East, along said South Plat Line, a distance of 2740.01 feet to the East line of the West 1/2 of said Section 18; thence departing said South line, run South 00°11'26" West, along said East line a distance of 2441.71 feet to the North line of Sumter Electric Cooperative, Inc. parcel as described in Official Records Book 2386, Page 2371, as recorded in Lake County, Florida; thence departing said East line, run South 88°58'14" West along the said North line, a distance of 439.00 feet to the Northwest corner of said Sumter Electric Parcel; thence departing said North line, run South 00°11'26" West along the West line of said Sumter Electric Parcel, a distance of 300.00 feet to the Southwest corner of said Sumter Electric Parcel and the North line of a Florida Power Corporation parcel, as described in Official Records Book 691, Page 853, as recorded in Lake County, Florida; thence departing said West line run South 88°58'14" West along said North line, a distance of 406.52 feet to the Northwest corner of said Florida Power Corporation parcel; thence departing said North line, run South 18°9'24" East along the Westerly line of said Florida Power Corporation parcel, a distance of 606.96 feet to the Southwest corner of said Florida Power Corporation parcel and the South line of said Southwest 1/4 of Section 18; thence departing said Westerly line, run South 88°58'14" West along the said South line, a distance of 1354.42 feet to the Southeast corner of the South 3/4 of the West 1/2 of the West 1/2 of said Southwest 1/4; thence departing said South line, run North 00°12'01" East along the East line of said South 3/4 of the West 1/2 of the West 1/2 of the Southwest 1/4, a distance of 1978.36 feet to the Northeast corner of the South 3/4 of the West 1/2 of the West 1/2 of said Southwest 1/4; thence departing said East line, run South 88°43'43" West, along the North line of South 3/4 of the West 1/2 of the West 1/2 of the Southwest 1/4; a distance of 722.85 feet to the Southeast corner of the North 1/2 of the Northeast 1/4 of the Southeast 1/4 of said Section 13; thence departing said North line run South 89°45'06" West, along the South line of said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13, a distance of 1,323.86 feet to the Southwest corner of said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13; thence departing said South line, run North 00°15'51" West, along the West

line said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13, a distance of 659.00 feet to the Southwest corner of the Southeast 1/4 of the Northeast 1/4 of said Section 13; thence departing said West line, run North 00°17'47" West along the West line of said Southeast 1/4 of the Northeast 1/4 of Section 13, a distance of 635.96 feet to the Point of Beginning.

PARCEL II:

That part of the South 1,701.91 feet, less the South 880.20 feet thereof, of the Southeast 1/4 of Section 18, Township 19 South, Range 28 East, Lake County, Florida, lying West of the Westerly right-of-way line of State Road #437.