**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **SUNTRUST EQUIPMENT FINANCE AND LEASING CORP.,** | **CASE NO. 6:13-cv-00657-JA-KRS** |
| **Plaintiff,** | |
| vs. | |
| **BLUECHIP POWER, LLC, f/k/a BLUECHIP ENERGY, LLC, et al,** | |
| **Defendants.** | |
| _____/ | |

**MICHAEL M. MOECKER'S, THE RECEIVER, OBJECTION**
**TO SHUFFIELD, LOWMAN & WILSON'S MOTION TO QUASH SUBPOENA**

Michael M. Moecker, as Receiver for the Lessee Defendants pursuant to that certain Order Appointing Receiver and Granting Preliminary Injunctive Relief (Doc. No. 56) (the "Receiver Order"), by and through his undersigned counsel, hereby requests this Court, pursuant to Federal Rules of Civil Procedure 45, deny Shuffield, Lowman & Wilson's Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Motion to Quash"), filed with the Court on July 9, 2013 (Doc. No. 91) and, in support thereof, states as follows:

1.  This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1332. Venue of this case and the motion in this district is proper pursuant to 28 U.S.C. §§ 89 and 1391.

2.   On April 23, 2013, SunTrust Equipment Finance and Leasing Corp. ("SunTrust") filed a Verified Complaint for Monetary Judgment, Petition for Appointment of Receiver, Replevin, Foreclosure, and Injunctive Relief (the "Complaint") (Doc. No. 1).

3.   Pursuant to the Receiver Order, Michael M. Moecker ("Moecker" or "Receiver") was appointed as Receiver for the Lessee Defendants, and granted the authority to do the following:

(a) institute ancillary proceedings in this state or other states or countries as are necessary to preserve and protect any of the Lessee Defendants' assets or property;

(b) depose any officer, agent or shareholder of the Lessee Defendants; and

(c) initiate, pursue, resist, defend, or intervene in all suits, actions, claims, liens, and demands which involve the Receivership Estate, as defined in the Receiver Order.

4.   Since his appointment, Moecker has determined that the Receivership Estate is insolvent, and that secured and unsecured creditors will not be paid in full on account of their claims.

## FACTUAL BACKGROUND

5.   Prior to the Complaint and the Receiver Order, Shuffield, Lowman & Wilson P.A. (the "Law Firm") represented the Lessee Defendants in numerous matters, including corporate and transactional matters.

6.   On June 26, 2013, counsel for Moecker served a subpoena (the "Subpoena") on the Law Firm in order to determine the following:

(a) whether any ancillary proceedings in this state or other states or countries need to be instituted to preserve and protect any of the Lessee Defendants' assets or property, including but not limited to, actions for fraud, conspiracy, fraudulent transfers, breach of fiduciary duty and malpractice; and

(b) whether any additional officers, agents or shareholders of the Lessee Defendants, including legal representatives and accountants, need to be deposed.

7. The Subpoena requested that the Law Firm produce the following for inspection and copying at the law offices of Latham, Shuker, Eden & Beaudine LLP within fourteen days (the "Requested Documents"):

(a) the entire client file for each of the Lessee Defendants;

(b) copies of all Shuffield Lowman billing and account statements related to the Lessee Defendants for the two years prior to May 22, 2013, including records of monies transferred to Shuffield Lowman from, or held on behalf of, the Lessee Defendants; and

(c) correspondence, including emails, by and between, or on behalf of, Shuffield Lowman and any of the Lessee Defendants.

8. In an attempt to narrow the scope of the Requested Documents, counsel for the Receiver requested the Law Firm provide: (i) a list of all client matters and submatters opened for the receivership entities; (ii) all billing statements and payment histories for the receivership entities; and (iii) engagement letters for each of the receivership entities. The Law Firm refused to provide the above requested documentation, and has steadfastly refused to confer in good faith regarding the production of documents. Rather the Law Firm has

insisted on payment in advance of approximately $14,000.00 to review emails and nine boxes of documents prior to providing Moecker any information on what exactly the Law Firm was doing, what entities it was representing, and how much it was paid and by whom.

9. On July 9, 2013, the Law Firm filed the Motion to Quash raising the following objections to the Subpoena and Requested Documents: (i) the Subpoena is unduly burdensome; (ii) the Subpoena fails to identify the Requested Documents with particularity, the request is over-broad and seeks irrelevant documents; and (iii) the Receiver has not provided an explanation or a need for the Requested Documents.

10. Since June 28, 2013, the Receiver has attempted to consensually secure the production of the documents without court action. However, the Law Firm has not wavered in its opinion regarding the Subpoena.

## MEMORANDUM OF LAW

11. The Law Firm's Motion to Quash has no basis in law or fact and is without cause and should be denied. Specifically, (i) the production of the Requested Documents is not unduly burdensome, and to the extent the Law Firm's method of record-keeping has created a burden, the Receivership Estate should not be penalized; (ii) the Requested Documents are sufficiently described so as to permit the Law Firm to locate and produce them; and (iii) the mere assertion that the Law Firm does not understand why the Receiver was subpoenaed the Requested Documents is an insufficient objection.

4

A. Unduly Burdensome

12.     A district court is "entitled to broad discretion in managing pretrial discovery matters." *Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 (11th Cir. 2002). Although the court has substantial discretion in the allocation of costs of discovery, the condition of advancement of costs must be based upon a reasonable amount.

> Typically, a non-party is required to absorb the costs of complying with a subpoena duces tecum. Occasionally, a moving party will be ordered to advance costs to a non-party as a condition to denying a motion to quash if the non-party can demonstrate that compliance would require the expenditure of an excessive amount of time or money. On other occasions the advancement of costs has been denied regardless of expense in instances where the case was of significant public interest. *Cantaline v. Raymark Industries, Inc. et al.*, 103 F.R.D. 447, 450 (S.D. Fla. 1984).

13.     In the instant case, the Law Firm is claiming that it will incur a minimum of $14,000.00 to locate emails related to the Lessee Defendants, and review those emails "to ensure that privileged and confidential communications between Shuffield and its other clients are not produced." *Motion to Quash*, p. 6.

14.     The Court in *In re Brand Name Prescription Drugs Antitrust Litigation*, 1997 WL 360526 (U.S. Dist. N.D. IL. 1997) addressed an analogous cost-sharing dispute between parties concerned over production of at least 30 million pages of e-mail stored on back-up tapes. In evaluating both the relative expense and burden of producing the electronic discovery, and the degree such an undertaking would provide a benefit, the Court remarks "if a party chooses an electronic storage method, the necessity for a retrieval program or

method is an ordinary and foreseeable risk." *Id.* at *2. The party creating the storage method must have understood from the beginning it could one day need to retrieve it.

15.     Moreover, citing the United States Court of International Trade, the Court declares "It would be a dangerous development in the law if new techniques for easing the use of information became a hindrance to discovery or disclosure in litigation. The normal and reasonable translation of electronic data into a form usable by the discovering party should be the ordinary and foreseeable burden of a respondent in the absence of a showing of extraordinary hardship." *Id.*, citing *Daewoo Electronics Co. v. United States*, 650 F.Supp. 1003, 1006 (Ct.Int'l Trade 1986).

16.     A party storing electronic data, especially a law firm understanding the importance of maintaining accessibility of critical documents, makes conscious choices in selecting one method instead of another. Because a party chooses an apparently expensive storage method should not therefore exorbitantly burden others needing access to its contents. "We do not believe that it is a burden [a party] should bear, particularly where, as here, 'the costliness of the discovery procedure involved is ... a product of the defendant's record-keeping scheme over which the [plaintiffs have] no control." *Id.*, citing *Delozier v. First Nat. Bank of Gatlinburg*, 109 F.R.D. 161 (U.S. Dist. E.D. Tenn. 1986).

17.     In cautioning against cost-shifting discovery costs, the Court in *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (U.S. Dist. SDNY 2003), stresses cost-shifting should be considered *only* when electronic discovery creates an "undue burden or expense" for the responding party. An "undue" burden "outweighs its likely benefit, taking into

6

account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id.*

18. To evaluate the discovery request and whether to shift costs, the *Zubulake* Court considers what it identifies as the most important consideration: the marginal utility test, which evaluates the extent to which the request is specifically tailored to discover relevant information, and the availability of such information from other sources. *Id.* at 323. For example, "the more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that the [responding party] search at its own expense. The less likely it is, the more unjust it would be to make the [responding party] search at its own expense." *Id.*, citing *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001).

19. In the case *sub judice*, the discovery requests are narrowly tailored to find relevant transactional information necessary for the Receiver to conduct a thorough analysis as he carries forth his requisite duties. Upon information and belief the requested information in the time period identified will likely provide relevant and material evidence mitigating against any requirement the Receiver share in the expense of obtaining the discoverable material.

20. The *Zubulake* Court further considers the overall expense of the discovery request and which party is capable of bearing those costs. These factors further weigh against cost-shifting in the proceeding *sub judice*, for the Receivership Estate is administratively insolvent. The discoverable information may produce evidence that can greatly benefit the

estate, and thereby assisting recoveries to claim-holders. The benefit to claim-holders in the instant case points to the third *Zubulake* consideration: the importance of the litigation itself. This third factor further weighs against cost-shifting, for the Receiver is fulfilling an important function to recover assets for the benefit of all claim-holders.

21. Secondly, the Law Firm's claim of attorney-client privilege with respect to emails, electronically stored documents, and the "nine boxes" of paper files is not well-taken. Any documents contained within the Law Firm's files which constitute communications with the Lessee Defendants are subject to production to the Receiver. The Receiver is the legal representative of the Lessee Defendants and the holder of attorney-client privilege.

22. The attorney-client privilege is only available when all the elements are present. *Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 690 (M.D.Fla.2005) (citing *Provenzano v. Singletary*, 3 F. Supp 2d 1353, 1366 (M.D.Fla.1999) *aff'd*, 148 F.3d 1327 (11th Cir.1998)). The elements of the attorney-client privilege are: (1) where legal service advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived. *Universal City Development Partners, Ltd.*, 230 F.R.D. at 690 (quoting *International Telephone and Telegraph Corp. v. United Telephone Co.*, 60 F.R.D. 177, 184-185 (M.D.Fla.1973)). The party asserting the privilege has the burden of proving the existence

of the privilege. *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991). Under Florida law, the attorney-client privilege only protects confidential communications between a lawyer and a client. *Geico Cas. Co. v. Beauford*, 2006 WL 2990454, *1 (M.D.Fla. Oct.19, 2006) (citing Fla. Stat. § 90.502(1)). "The burden is on the party claiming the privilege to establish that each communication or document sought to be protected falls within the privilege protection." Id.

23.     In the instant case, Moecker has advised the Law Firm that he is waiving the attorney-client privilege on behalf of the Lessee Defendants with respect to the information contained in the files maintained by the Law Firm for the purpose of producing those documents to Latham Shuker Eden & Beaudine, LLP.

B. Over-broad, Lack of Particularity, and Irrelevant

24.     In the instant case, the Law Firm objects to the Subpoena on the basis that the requests are over-broad, lack particularity and are irrelevant to this case. All of the Requested Documents have easily been identified by the Law Firm, as stated in the Motion to Quash. The Receiver has requested: (i) the client files, which obviously consist of the nine boxes and the electronic documents saved on either the Law Firm's server or on the hard drives of individual attorneys' computers; (ii) the billing and account statements of the Law Firm with respect to each of the Lessee Defendants, which should also be maintained in an accessible format on the Law Firm's server; and (iii) correspondence, which should be part of the client files or saved on the Law Firm's server. All of the Requested Documents are relevant to the duties and responsibilities set forth in the Receiver Order.

25. The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Federal Rule of Civil Procedure 26, provides in relevant part, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."

26. Relevance is construed broadly to encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978). A discovery request "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Rosenberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D.Pa. 1980).

27. Objections to discovery must be "plain enough and specific enough so that the court can understand in what way the [discovery is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). Objections to discovery on the grounds that it is over-broad and not relevant are not sufficient, the objecting party should state why the discovery is overly broad or not relevant. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982).

28. The Subpoena seeks information regarding the scope of the Law Firm's representation of the Lessee Defendants and the transfer of funds by and between the Law Firm and the Lessee Defendants, which bear directly on the issues raised in the Receiver Order.

29.     Moreover, the Supreme Court in *Hickman v. Taylor*, held that the discovery rules are to be accorded a broad and liberal treatment. *See Hickman*, 329 U.S. at 507-508, 67 S. Ct. at 392. "No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." *Id*.

30.     Finally, the rules allow discovery regarding any matter that is relevant to the subject matter of the action subject to four general limitations. These are (i) privileged matter is not discoverable; (ii) discovery of material obtained in preparation for trial, including expert testimony, is restricted; (iii) a physical or mental examination can be ordered only for good cause and only if physical or mental condition is in controversy; and (iv) as is indicated by Rule 26(b), the court may limit the scope of discovery in accordance with the rules.

31.     The mere assertion that "the Receiver has not provided any explanation for, let alone demonstrated a need for, the documents sought by the Subpoena" is insufficient and fails to adequately state grounds for preventing disclosure.

## REQUESTED RELIEF

32.     The Receiver requires the responses to his Subpoena in order to comply with the Receiver Order and evaluate (a) whether any ancillary proceedings in this state or other states or countries need to be instituted to preserve and protect any of the Lessee Defendants' assets or property, including but not limited to, actions for fraud, conspiracy, fraudulent transfers, breach of fiduciary duty and malpractice; and (b) whether any additional officers,

11

agents or shareholders of the Lessee Defendants, including legal representatives and accountants, need to be deposed.

33. The Law Firm's request for advance compensation in the minium amount of $14,000.00 is unreasonable, and compensation, if any, should be done upon separate application to the Court and treated as any other claim in this receivership.

34. The Receiver requests this Court deny the Motion to Quash and order the Law Firm to produce for inspection and copying the Requested Documents.

**WHEREFORE**, Michael M. Moecker, as Receiver for the Lessee Defendants, respectfully requests this Court enter an order against Shuffield, Lowman & Wilson P.A. as follows: (i) denying the Motion to Quash; (ii) compelling Shuffield, Lowman & Wilson P.A. to produce for inspection and copying the Requested Documents; and (iii) for such other and further relief as this Court deems just and proper under the circumstances.

**DATED**, this 23rd day of July, 2013.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire
Florida Bar No.: 984469
Mariane L. Dorris, Esquire
Florida Bar No.: 0173665
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
P.O. Box 3353
Orlando, Florida 32801
Tel: (407) 481-5800
Fax: (407) 481-5801
Attorneys for Receiver, Michael M. Moecker

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SUNTRUST EQUIPMENT FINANCE AND LEASING CORP.,**

CASE NO. 6:13-cv-00657-JA-KRS

　　　　　**Plaintiff,**

vs.

**BLUECHIP POWER, LLC, f/k/a BLUECHIP ENERGY, LLC, et al,**

　　　　　**Defendants.**
　　　　　　　　　　　　　　　　　／

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date a true and accurate copy of the foregoing was filed and served via CM/ECF system to all counsel of record.

**DATED** this 23rd day of July 2013.

　　　　　　　　　　　　　　　　　 /s/ R. Scott Shuker
　　　　　　　　　　　　　　　　　R. SCOTT SHUKER
　　　　　　　　　　　　　　　　　Florida Bar No.: 984469
　　　　　　　　　　　　　　　　　rshuker@lseblaw.com
　　　　　　　　　　　　　　　　　bknotice@lseblaw.com
　　　　　　　　　　　　　　　　　MARIANE L. DORRIS
　　　　　　　　　　　　　　　　　Florida Bar No.: 173665
　　　　　　　　　　　　　　　　　mdorris@lseblaw.com
　　　　　　　　　　　　　　　　　bknotice@lseblaw.com
　　　　　　　　　　　　　　　　　LATHAM, SHUKER,
　　　　　　　　　　　　　　　　　EDEN & BEAUDINE, LLP
　　　　　　　　　　　　　　　　　111 N. Magnolia Avenue, Suite 1400
　　　　　　　　　　　　　　　　　Orlando, Florida 32801
　　　　　　　　　　　　　　　　　Tel.:　(407) 481-5800
　　　　　　　　　　　　　　　　　Fax:　(407) 481-5801
　　　　　　　　　　　　　　　　　Attorneys for Receiver