## SUBORDINATION AND INTERCREDITOR AGREEMENT
[SunTrust Equipment Finance & Leasing Corp.]

THIS SUBORDINATION AND INTERCREDITOR AGREEMENT (this "Agreement") is made effective as of December 14, 2012 (the "Effective Date"), between SUNTRUST EQUIPMENT FINANCE & LEASING CORP., a Virginia corporation ("Senior Creditor") and FIFTH THIRD BANK, an Ohio banking corporation ("Subordinating Creditor").

### PRELIMINARY STATEMENTS

A. ICT Investments, LLC, a Wyoming limited liability company ("ICT"), is indebted to Subordinating Creditor pursuant to that certain Amended and Restated Renewal Promissory Note dated December 14, 2012, in the principal amount of $2,549,693.05 (the "ICT Note").

B. ICT's obligations under the ICT Note (the "Guaranteed Obligations") are unconditionally and irrevocably guaranteed by certain of its affiliates, including Advanced Solar Photonics, LLC, a Delaware limited liability company ("Advanced Solar"), Blue Chip Energy, LLC, a Florida limited liability company ("BCE"), Blue Chip Power, LLC, a Florida limited liability company ("BCP"), and Laser Photonics, LLC, a Florida limited liability company ("Laser Photonics"), and US Investing Corporation, a Delaware corporation ("US Investing")(collectively, "Guarantors").

C. The Guaranteed Obligations are secured in part by security interests granted by certain Guarantors to Subordinating Creditor, covering the collateral described in the UCC-1 Financing Statements described on attached Schedule A (collectively, the "Subordinating Creditor Collateral").

D. Pursuant to Equipment Lease Agreement No. 08830 dated December 10, 2012, together with all Schedules, Riders, Appraisals, and other related documents (collectively, the "Equipment Lease"), Senior Creditor has agreed to provide equipment lease financing (the "Equipment Lease Financing") to BCP, BCE, Advanced Solar, Laser Photonics, ICT, and US Investing (collectively, the "Lessee"), and the amounts owed to Senior Creditor pursuant to the Equipment Lease Financing (the "Senior Creditor Indebtedness") are secured in part by security interests granted by Lessee to Senior Creditor, covering the collateral described on attached Schedule B ("collectively, the "Senior Creditor Collateral").

E. As a condition to extension of financing pursuant to the Equipment Lease Financing, Senior Creditor has required the execution and delivery of this Agreement to establish the relative rights of Senior Creditor and Subordinating Creditor with respect to the Subordinating Creditor Collateral and the Senior Creditor Collateral.

F. Subordinating Creditor has agreed to enter into this Agreement as an inducement to Senior Creditor to make provide financing pursuant to the Equipment Lease Financing.

**EXHIBIT 2**

## AGREEMENT

**NOW, THEREFORE,** in consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Consent.</u> Subordinating Creditor consents to Lessee's grant of a lien to Senior Creditor in the Senior Creditor Collateral pursuant to the Equipment Lease. Subordinating Creditor further consents to the transfer of title to the Equipment (as defined in the Equipment Lease) to Senior Creditor free and clear of Subordinating Creditor's liens and interests, to the extent that the Equipment Lease is a "true" lease. Subordinating Creditor agrees that such actions do not constitute an event of default under the security agreements governing Subordinating Creditor's security interests in the Subordinating Creditor Collateral.

2. <u>Priority of Liens and Subordination.</u> Senior Creditor and Subordinating Creditor agree that from and after the Effective Date:

    (a) to the extent that the Equipment (as defined in the Equipment Lease) is the property of Senior Creditor and not deemed Senior Creditor Collateral under the Equipment Lease, Subordinating Creditor releases and disclaims any and all right, title or interest in such Equipment;

    (b) the lien of the Senior Creditor in the Senior Creditor Collateral (which specifically includes the Equipment (as defined in the Equipment Lease) if the Equipment Lease is ever determined not to be a "true" lease) shall have first priority and be superior to the lien and security interest of Subordinating Creditor in any portion of the Subordinating Creditor Collateral that also is part of the Senior Creditor Collateral; and

    (c) the lien of Subordinating Creditor in the Subordinating Creditor Collateral shall be junior and subordinate to the lien and security interest of Senior Creditor in any portion of the Senior Creditor Collateral (including the Equipment if applicable) that also is part of the Subordinating Creditor Collateral.

3. <u>Priority of Disposition of Proceeds of Collateral.</u> In the event of any disposition, all proceeds of Senior Creditor Collateral shall be distributed to Senior Creditor until the Senior Creditor Indebtedness has been paid in full.

4. <u>Receipt of Monies in Regards to Collateral.</u> Subordinating Creditor agrees that if it should receive any monies from the sale, liquidation, collection or other disposition of any Senior Creditor Collateral at any time prior to payment in full of the Senior Creditor Indebtedness, it will hold such monies in trust for Senior Creditor and will promptly pay the same over to Senior Creditor.

5. <u>Actions with Respect to the Collateral.</u> Neither party has made any warranty or representation with respect to the execution, legality, validity, completeness or enforceability of the documents to which it is a party, or the collectability of the

indebtedness owing to it. Except as provided in this Agreement, Senior Creditor shall not have any liability to Subordinating Creditor for actions that Senior Creditor, in good faith, takes or omits with respect to its collateral, or the indebtedness secured thereby, including, without limitation, actions with respect to the creation, perfection or continuation of its liens, actions with respect to the occurrence of an event of default, actions with respect to foreclosure upon, sale, disposition, collection or failure to realize upon, such collateral, and actions with respect to collection of such indebtedness, including any liability for failure to dispose of Senior Creditor Collateral in a commercially reasonable manner. Without limiting the generality of the foregoing, Senior Creditor may (x) compromise, settle, adjust, and in general deal in any manner with its indebtedness upon such terms and conditions as it deems appropriate, (y) retain third parties to assist in liquidation, collection or foreclosure of its collateral, and (z) incur reasonable out-of-pocket costs and expenses incidental to the exercise of such rights, including, without limitation, attorneys' fees and disbursements. Subordinating Creditor shall take no action to contest the nature, validity, or extent of any of Senior Creditor's liens, and hereby agree and consents that the Senior Creditor's security interests are first priority, valid, properly perfected security interests in all of the Senior Creditor Collateral, whether now existing or hereinafter created, and including all additions, attachments, accessories and accessions thereto. Subordinating Creditor shall not contest the application of any of the Senior Creditor Collateral to the payment of any interest, default or otherwise, as provided in the Equipment Lease or to payment of the full amount of the accelerated rent payments due to Senior Creditor under the Equipment Lease. Subordinating Creditor agrees to give Senior Creditor fourteen (14) days prior, written notice to the notice party described below of any action by Subordinating Creditor to foreclose or otherwise repossess, judicially or non-judicially, any Senior Creditor Collateral or Subordinating Creditor Collateral.

6. <u>Bankruptcy</u>. In the event that one or more entities of Lessee is placed under bankruptcy protection, either voluntarily or involuntarily, Subordinating Creditor hereby consents to the inclusion of default interest or the full amount of the accelerated rent payments due to Senior Creditor in the claim of Senior Creditor. Subordinating Creditor further agrees not to participate with any such bankruptcy debtor by voting for any plan which includes a cramdown of Senior Creditor's claim without the written consent of Senior Creditor.

7. <u>Term</u>. This Agreement shall constitute a continuing agreement between the parties. Senior Creditor may, pursuant to the terms of the Equipment Lease Financing, continue to lend monies, extend credit and make other credit accommodations to or for the account of Lessee without notice to Subordinating Creditor, and Subordinating Creditor may continue to lend monies, extend credit and make other credit accommodations to or for the account of ICT or Guarantors without notice to Senior Creditor, subject to the terms of this Agreement.

8. <u>Issues Not Resolved by This Agreement</u>. Notwithstanding the specific terms of this Agreement regarding Subordinating Creditor's subordination of its security interests in such Subordinating Creditor Collateral that is also Senior Creditor Collateral, the parties have not agreed on certain other collateral issues as set forth below (the "Disputed <u>Collateral</u>"), and in such regard, this Agreement does not constitute any agreement related

to the Disputed Collateral, and each party reserves all its rights regarding the nature, extent, validity or priority of the other party's lien or security interest in the Disputed Collateral. The Disputed Collateral is as follows:

(a) Subordinating Creditor has a security interest in all assets of Solar Lease, LLC, a Florida limited liability company ("Solar Lease"). Senior Creditor may have an interest in certain assets of Solar Lease if Senior Creditor is determined by any court to have ownership of, or a security interest in, any assets of either by reformation or alteration of the Equipment Lease to include any such assets, or by a determination that Solar Lease is an alter ego of any entity of Lessee, or on account of any other similar findings.

(b) Pursuant to a pledge agreement given by ITC, Subordinating Creditor currently holds a security interest in certain membership interests in Rinehart Solar Farm, LLC, and Sorrento Solar Farm, LLC, which interests are currently owned by ICT (the "Interests"). A subsequent determination will be required to establish whether Senior Creditor has any lien or security interest in the Interests.

9. Additional Assurances. Each party agrees to deliver to the other party any further documents that the other party may reasonably request to give full force and effect to the provisions of this Agreement.

10. Notices. Any and all notices under this Agreement shall be in writing, signed by the party giving such notice and shall be delivered personally, sent by certified mail or overnight via nationally recognized courier service (such as Federal Express), or by email with receipt confirmation, to the other party at the address set forth below, or at such other address as may be supplied in writing and of which receipt has been acknowledged in writing. The date of personal delivery, telecopy or telex or three (3) business days after the date of mailing (or the next business day after delivery to such courier service), as the case may be, shall be the date of such notice, election or demand. For the purposes of this Agreement:

If to Senior Creditor:  SunTrust Equipment Finance & Leasing Corp.
303 Peachtree Street, Suite 1000
Atlanta, Georgia 30308
Attention: Juan De Jesus-Caballero
E-mail: juan.dejesus-caballero@suntrust.com

If to Subordinating Creditor:  Fifth Third Bank
1830 East Paris Avenue, MD RSCB3A
Grand Rapids, Michigan 49546
Attention: Michael B. Barkey
E-mail: Mike.Barkey@53.com

11. Governing Law. This Agreement will be governed by the substantive laws of the State of Florida, excluding, however, the conflict of law and choice of law provisions thereof. The parties irrevocably and unconditionally (a) agree that any suit, action or legal

proceeding arising out of or relating to this Agreement will be brought in the courts of record of the State of Florida, in Orange County or the District Court of the United States, for the Central District of Florida, Orlando Division; (b) consents to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts.

12. Parties. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns; provided, that each party agrees promptly following any assignment to give notice of such assignment to the other party. The term Lessee as used herein shall also refer to the successors and assigns of Lessee, including, without limitation, a receiver, trustee, custodian or debtor-in-possession. The terms "party" or "parties" shall refer only to Senior Creditor and Subordinating Creditor.

13. Authority. Each party represents and warrants that it has the authority to enter into this Agreement and that the person signing is duly authorized.

14. Severability. The provisions of this Agreement are independent and separable from each other. If any provision shall for any reason be held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of the Agreement.

15. Accounts Receivable. To the extent that Subordinating Creditor holds a first priority security interest in any of Lessee's accounts receivable (the "Accounts") and to the extent there exists an intervening creditor with a security interest perfected in the Accounts and currently superior to Senior Creditor's interests, Subordinating Creditor hereby grants and assigns to Senior Creditor its first priority security interest in the Accounts and subordinates any payment on account of such interest, and any rights it may have to distributions of the Accounts, including any rights related to cash collateral in any bankruptcy action involving any entity of Lessee. Senior Creditor, as assignee of these rights, may take any action to foreclose or otherwise collect upon the Accounts as if Senior Creditor were in the position of Subordinating Creditor. To the extent that this provision is found unenforceable in any proceeding, Subordinating Creditor agrees to transfer any proceeds received on account of its security interest in any Accounts to Senior Creditor to the extent Senior Creditor has not been paid in full on the indebtedness owed to it by Lessee.

16. Interpretation of Agreement to Be Consistent with Intentions. Senior Creditor has consented to the terms of this Agreement in lieu of requiring Subordinating Creditor to release all of its liens in the Subordinated Creditor Collateral and as an accommodation to Subordinating Creditor. The intentions of both parties in entering into this Agreement is to preserve the validity, extent, and priority of Subordinating Creditor's liens to the extent possible without prejudicing in any way the validity, extent, priority, or enforceability of Senior Creditor's liens. Subordinating Creditor hereby agrees to take no action, whether or not specifically described herein, which would unreasonably impair or interfere with the rights and remedies of Senior Creditor to the Senior Creditor Collateral or to its

property currently subject to a lease with Lessee in a manner inconsistent with the original intention of this Agreement.

17. WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS RELATED HERETO OR CONTEMPLATED HEREBY.

Executed as of the Effective Date.

SENIOR CREDITOR:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP., a Virginia corporation

By: /s/ W. W. Teegarden
Name: William W. Teegarden
Title: Vice President

SUBORDINATING CREDITOR:

FIFTH THIRD BANK, an Ohio banking corporation

By: _____
Name: _____
Title: _____

property currently subject to a lease with Lessee in a manner inconsistent with the original intention of this Agreement.

17. <u>WAIVER OF JURY TRIAL.</u> TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS RELATED HERETO OR CONTEMPLATED HEREBY.

Executed as of the Effective Date.

SENIOR CREDITOR:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP., a Virginia corporation

By: _____
Name: _____
Title: _____

SUBORDINATING CREDITOR:

FIFTH THIRD BANK, an Ohio banking corporation

By: _____
Name: _MICHAEL B. BARKEY_____
Title: _VICE PRESIDENT_____

## SCHEDULE A

### Subordinating Creditor Collateral

Advanced Solar (Delaware)

    #2011 2106808 -- filed 05-23-11
    Debtor - Advanced Solar Photonics, LLC
    Secured Party - Fifth Third Bank

    Covers accounts, accounts receivable, chattel paper, general intangibles, tangible personal property, equipment, machinery, furnishings, fixtures, inventory, and proceeds thereof.

BCE (Florida)

    #20110464261X -- filed 05/23/2011, amended 08/13/2012, amended 08/27/2012

    Debtor -- Blue Chip Power, LLC and Blue Chip Energy, LLC
    Secured Party - Fifth Third Bank

    Covers accounts, accounts receivable, chattel paper, general intangibles, tangible personal property, equipment, machinery, furnishings, fixtures, inventory, and proceeds thereof.

BCP (Florida)

    #20110464261X -- filed 05/23/2011, amended 08/13/2012, amended 08/27/2012

    Debtor -- Blue Chip Power, LLC, and Blue Chip Energy, LLC
    Secured Party - Fifth Third Bank

    Covers accounts, accounts receivable, chattel paper, general intangibles, tangible personal property, equipment, machinery, furnishings, fixtures, inventory, and proceeds thereof.

Laser Photonics (Florida)

    #201207382696 -- filed 08/22/2012

    Debtor -- Laser Photonics, LLC
    Secured Party - Fifth Third Bank

    Covers accounts, accounts receivable, chattel paper, general intangibles, tangible personal property, equipment, machinery, furnishings, fixtures, inventory, and proceeds thereof.

### ICT (Wyoming)

> #2011-47433948 -- filed 06-07-11
> Debtor – ICT Investments, LLC
> Secured Party - Fifth Third Bank
>
> Covers accounts, accounts receivable, chattel paper, general intangibles, tangible personal property, equipment, machinery, furnishings, fixtures, inventory, and proceeds thereof.

### US Investing (Delaware)

> No collateral – no UCC filing by Fifth Third Bank

## SCHEDULE B

### Senior Creditor Collateral

"Senior Creditor Collateral" consists of all of Lessee's right, title, and interest in and to all of the following (whether now existing or hereinafter created, and including any other collateral described in any rider to the Equipment Lease):

I. Equipment (to the extent a court determines that the Equipment Lease is not a true "lease" under the UCC) the Equipment consists of all assets described below or otherwise covered in the Equipment Lease and further includes all inventory, fixtures or other property comprising the Equipment, together with all related software (embedded therein or otherwise) and general intangibles, all additions, attachments, accessories and accessions thereto whether or not furnished by the Supplier (as defined in the Equipment Lease):

> Southeast Equipment Valuation Summary Appraisal Report on Solar Panel Manufacturing Equipment dated: 11/29/2010
>
> Industrial Asset Appraisals & Consulting, Inc. Summary Appraisal of Specified Manufacturing Equipment dated: 10/18/12
>
> Industrial Asset Appraisals & Consulting, Inc. Summary Appraisal of Power Generation Equipment dated: 10/18/12
>
> 3S Modultec XL3622CP, Titan FLS48, Meir ICOLAM 42/24, Komax Xcell X2, FL600, Blackstar PCB, Fantum G4, Inspection Table, LP Frame Press, Gravity Roller Conveyor, Fantom G3, Coherent Libra, ABM-G3, SBM 1200M, Yitterbium 1KW, Yitterbium 2KW, all power generation equipment which includes but is not limited to solar panels, conductors, and inverters (specific equipment covered with the Appraisal)

II. Other Collateral

> 1. All subleases, chattel paper, accounts, security deposits, and general intangibles relating thereto, and any and all substitutions, replacements or exchanges for any such item of Equipment or other collateral, in each such case in which Lessee shall from time to time acquire an interest; and
>
> 2. Any and all insurance and/or other proceeds of the property and other collateral in and against which a security interest is granted hereunder.

The Equipment Lease, including the Appraisals referenced therein, are hereby incorporated by reference into this Agreement for purposes of defining the Senior Creditor Collateral, subject, however, to each party's reservation of rights with respect to the nature, extent, validity or priority of the other party's lien or security interest in the Interests as provided in paragraph 8 above.