UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE AND LEASING CORP, | ) ) ) | |
| Plaintiff | ) ) | CASE NO. 6:13-cv-00657-JA-KRS |
| vs. | ) ) ) | |
| BLUECHIP POWER, LLC, f/k/a BLUECHIP ENERGY, LLC, *ET AL.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

UNOPPOSED MOTION FOR ENTRY OF AN ORDER
APPROVING RECEIVER'S SALE OF REAL PROPERTY AT PUBLIC AUCTION

Michael E. Moecker (the "Receiver"), as Receiver for the Lessee Defendants pursuant to that certain Order Appointing Receiver and Granting Preliminary Injunctive Relief (Doc. No. 56) (the "Receiver Order"), by and through undersigned counsel, and pursuant to Paragraph 6 of the Receiver Order, hereby requests entry of an order approving the Receiver's sale of certain real property at public auction held on September 11, 2013, at 10:00 a.m. at 33601 County Road 437, Sorrento, FL, 32776 (the "Carrier Real Property"), and in support thereof states as follows:

1.     On May 22, 2013, this Court appointed Michael E. Moecker as Receiver for the Lessee Defendants, as more fully set forth in the Receiver Order.

2.     Paragraph 6 of the Receiver Order granted the Receiver the power, among other things:

> to market and sell the assets of the Receivership Estate free and clear of all liens and encumbrances, with such liens and encumbrances to attach to the sales proceeds in the same validity, order, extent, and priority as existed immediately prior to such sale or disposition, provided, however, that the Receiver may sell the Carrier Real Property only if the sale provides for payment in full to Carrier such as is necessary to satisfy the Carrier Mortgage, or pursuant to the written consent of Carrier."

1

3.      As set forth in paragraph K of the Receiver Order, Defendant Jeffery L. Carrier as Trustee of the Jeffery L. Carrier Revocable Trust, dated February 6, 2001 (the "Carrier Trust") has a valid, first priority mortgage lien on the Carrier Real Property.

4.      In July 2013, the Receiver began marketing the Carrier Real Property for sale via public auction.  As set forth in paragraph K of the Receiver Order, Defendant Jeffery L. Carrier as Trustee of the Jeffery L. Carrier Revocable Trust, dated February 6, 2001 (the "Carrier Trust") has a valid, first priority mortgage lien on the Carrier Real Property.  The Receiver's marketing efforts were extensive, including online and print ads in the Walls Street Journal.

5.      Also in July 2013, the Receiver, through his counsel, informed the Carrier Trust of the Receiver's intention to market and sell the Carrier Real Property at auction, and the parties agreed to certain terms under which the Carrier Trust would consent to the Carrier Real Property being sold. Accordingly, effective August 23, 2013, the Receiver, the Carrier Trust, plaintiff SunTrust Equipment Finance and Leasing Corp. ("SunTrust"), Fifth Third Bank, and Moecker Realty, Inc., and Sperry Van Ness Commercial Realty (the "Agent"), entered into that certain Commercial Listing Agreement setting forth the terms and conditions under which the Carrier Real Property would be sold at public auction.  A true and correct copy of the Listing Agreement is attached hereto as **Exhibit "A."**

6.      On September 11, 2013, at 10:00 a.m. the Receiver, through the Agent, sold the Carrier Real Property by public auction held on the premises of the Carrier Real Property.  The successful bid was for $1,075,000.00, plus a 10% buyer's premium, submitted by Arthur H. Witte. Upon the conclusion of the bidding, the Receiver and Mr. Witte executed a Real Estate Sales Contract (the "Sales Contract") (a true and correct copy of which is attached hereto as **Exhibit "B"**). The Closing of the Sales Contract is scheduled for October 11, 2013.

7.      Pursuant to the Sales Contract, Mr. Witte will bear the cost of procuring an Owner's

Title Commitment and Policy on the property from the Title Company of South Florida (the "Title Company"). One of the requirements for a title policy is the recording in the public records of Lake County, Florida of an order approving the Receiver's sale of assets in this case.

8.      Accordingly, to assist Mr. Witte in obtaining a title policy, the Receiver requests this Court enter an order approving the sale of the Carrier Real Property by public auction. A proposed form of order is attached hereto as **Exhibit "C."**

9.      Neither the Carrier Trust, SunTrust, nor Fifth Third oppose the relief sought herein.

**WHEREFORE**, the Michael E. Moecker, as Receiver for the Lessee Defendants, hereby requests the entry of an order approving the sale of the Carrier Real Property by public auction in substantially the form attached hereto as **Exhibit "C"**, authorizing the Receiver to take such actions necessary to consummate the Sales Contract, and granting such further relief as the Court deems fair and equitable.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September 2013, a true and accurate copy of the foregoing motion was filed with the Court and served via the CM/ECF system to all counsel of record.

R. Scott Shuker, Esq.
Florida Bar No. 0984469
Christopher R. Thompson, Esq.
Florida Bar No. 0093102
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32802-3353
Telephone: 407-481-5800
Facsimile: 407-481-5801
*Attorneys for the Receiver*

# COMMERCIAL LISTING AGREEMENT

Date __A u g u s t   2 3 ,   2 0 1 3__           **EXCLUSIVE RIGHT OF SALE**

### BlueChip Energy, LLC
**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION**
**Case # 6:13-cv-00657-JA-KRS**

1.    In consideration of the agreement of **Moecker Realty and Sperry Van Ness Commercial Realty ("Agent")** to use its best efforts to secure a Purchaser for the property described below and on the attached Exhibit "A" hereto (the "Property"), and your further agreement to cooperate with other real estate brokers, and pursuant and subject to the terms of that certain Order Appointing Receiver and Granting Preliminary Relief in the above referenced case (Doc. No. 56) (the "Order"), the undersigned Receiver ("Receiver") hereby gives Agent for a period of 5 months from this date (subject to certain conditions as set forth below - see Paragraph 24 below) (the "Effective Date") the exclusive right and authority to sell the Property pursuant to the following price and terms, or at any other price and terms acceptable to Receiver, subject to the terms and conditions set forth herein:

  Price:   The Property will be sold by "ABSOLUTE AUCTION" - The Secured Creditor, the Jeffery L. Carrier Revocable Trust

  (the "Carrier Trust") shall have the right to bid at the auction. Prior to the Auction, Agent shall try to secure a 'Stalking Horse

  Bidder," and the minimum "Stalking Horse" Contract price will be $1,000,000 plus 10% Buyers Premium, plus Closing Cost. -

  Terms:   Cash -- via Auction (Preliminary Auction Date of September 11, **2013**)

  Property Address:   33601 County Road 437, Sorrento, FL 32776
            Parcel ID: 13-19-27-000100000100 & 18-19-28-000200002100

  Taxes, insurance and rents shall be prorated between the Receiver and Purchaser at the date of closing.  Mortgages which encumber and improvement liens filed against the Property are to be paid by the Receiver.  This exclusive right and authority of agent shall expire at midnight on  January 2, 2014. (subject to certain conditions as set forth below - see Paragraph 24 below).

2.    In the event Agent procures a Purchaser for the Property, or the Carrier Trust is the higher and successful bidder as provided in Paragraph 23 below, Receiver agrees to deliver to the Purchaser or the Carrier Trust (or its assignee), as applicable, a good and sufficient special warranty deed, free and clear of all liens and encumbrances except those encumbrances of record which do not render title unmarketable and those which the Purchaser or the Carrier Trust, as applicable, assumes as part of the purchase price.  Receiver shall issue to the Purchaser, or the Carrier Trust, as applicable, an owner 's title insurance policy issued by a qualified title insurance underwriter  insuring title to the  Property, at the expense of the Purchaser of the Carrier Trust.

3.    Receiver agrees to compensate Agent for finding a Purchaser for the above Property as follows:

  A.    Receiver agrees to pay Agent a professional service fee in the event of a sale.

  The professional service fee shall be paid as follows:  **(IF NOT COMPLETED, THEN SHALL NOT APPLY.)**

    a.    If a sale:  A total fee of____10___% of the purchase price shall be paid by the Buyer as a Buyer's Premium and shall be paid at closing.   If the Purchaser is procured by another real estate agent/broker (co-broker) the fee shall be split: 7% to the listing agent (Split between Moecker Realty Inc. and Sperry Van Ness Commercial Realty) and 3% to the co-broker.

    b.    If a sale to the Carrier Trust by credit bid:  A total fee of _2%_ of the purchase price shall be paid by the Carrier Trust at closing.

B.  During the term of this Agreement, Receiver shall pay the professional service fee to Agent whether the Purchaser is procured by Receiver or Agent, or by any other person, for a price and terms acceptable to Receiver. Receiver shall pay the professional service fee to Agent if the Property is sold, conveyed, or otherwise transferred within __120__ days after the termination of this Agreement or any extension thereof to anyone with whom Agent has had negotiations prior to the final termination of this Agreement, provided Receiver has received notice in writing from Agent, including the name of each such prospective Purchaser, before or upon termination of this Agreement or any extension hereof, provided that such transferee or grantee shall not include the Carrier Trust, or its assignee.

4.  In consideration of the exclusive right and authority herein granted by Receiver, the Agent agrees as follows:

A.  To inspect the Property and to accumulate relevant sales information pertaining to the Property.

B.  To use Agent's concentrated best efforts in bringing about a sale of the Property to a qualified Purchaser.

C.  To advertise the Property for sale as Agent deems advisable in local newspapers or other forms of advertising media.

D.  To furnish at all times such additional information that may be requested by any other real estate broker and to assist cooperating brokers in closing a sale of the Property when requested to do so.

E.  Conduct a live auction at the Property.

5.  In consideration of the covenants and agreements contained herein, Receiver agrees to refer to Agent all inquiries of any brokers or other interested parties in the Property.

6.  Receiver authorizes Agent to accept, receipt for and hold all money paid or tendered as a deposit for the purchase or lease of the Property. If such deposit is forfeited or is otherwise not returned to the prospective Purchaser or lessee, Agent may retain the lesser of one-half of such deposit, or the total amount of the professional service fee provided for herein, as compensation for its efforts hereunder.

7.  Receiver warrants and represents to Agent that it is the Receiver of the Property and Receiver has full power and authority to enter into this Agreement.

8.  Receiver understands that this Agreement does not guarantee the sale of the Property, but that it does insure that Agent will make an earnest and continued effort to sell or lease same until this Agreement has expired or is terminated.

9.  Receiver acknowledges that Receiver shall have responsibility for the care, custody and maintenance of the Property at all times during the term of this Agreement. Receiver shall indemnify Agent against, and hold Agent harmless from, any and all claims, demands, causes of action, debts, liabilities, judgments, charges and expenses (including, without limitation, costs and reasonable attorneys' fees incurred in connection with enforcement of this indemnity) arising out of injuries or damages to persons or property, by reason of any causes whatsoever (other than the gross negligence or willful and intentional misconduct and/or fraud of Agent or Agent's employees) if such liability or expense is incurred while Agent or Agent's employees are acting pursuant to this Agreement or at Receiver's direction or with Receiver's express approval.

10.  Receiver acknowledges that under the 1968 Fair Housing Act, the Receiver has the responsibility to sell the Property to a qualified Purchaser regardless of race, color, creed, sex or national origin.

11.  All notices to be given pursuant to this Agreement shall be in writing and signed by the party giving notice. Notices shall be deemed given when deposited in the United States Mail, postage prepaid, registered or certified, with return receipt requested to the following addresses:

To Agent:   Moecker Realty, Inc. & Sperry Van Ness Commercial Realty
            3613 North 29th Avenue
            Hollywood, FL 33020

NAPLES/619863v.2

2 of 8

To Receiver:    Michael E. Moecker
3613 North 29th Avenue,
Hollywood, FL 33020

To Carrier:    Jeffery L. Carrier, CPA
2614 Tamiami Trail North
Suite 712
Naples, FL 34103

12.   This Agreement is not assignable or transferable by Agent without the prior written consent of Receiver.

13.   This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

14.   This Agreement is the result of a full negotiation between the Agent and Receiver and is to be fairly construed and applied to each party.

15.   Agent is not and shall never be liable to any creditor of Receiver or to any claimant against the Receiver.  Nothing contained in this Agreement shall constitute or be construed to create a partnership or joint venture between Receiver and Agent, it being the intention of the parties that the only relationship hereunder is that of an independent contractor.

16.   For the purpose of this Agreement, the word "sale," or "purchase," and/or their derivatives shall be deemed to be interchangeable with respective to the transaction contemplated in Section 3, Paragraphs A, B and C and Section 4, Paragraphs A thru D.

17.   If any provision of this Agreement, or the application thereof, shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and shall be enforced to the greatest extent permitted by law.

18.   No consent or waiver, express or implied, by either Receiver or Agent of any breach or default by the other in the performance of their respective obligations under the terms of this Agreement shall be deemed or construed to be a consent or waiver of any breach or default in the performance by the other party of the same breach or default at a later date or to any other obligation of such party under this Agreement.

19.   In connection with any litigation arising out of this Agreement, the prevailing party, whether Receiver or Agent, shall be entitled to recover all costs incurred, including reasonable attorneys' fees rendered in connection with such litigation, including all appellate and post judgment proceedings.

20.   Receiver acknowledges and agrees that Agent shall have a lien on the proceeds of any sale or lease of the Property for the amount of any professional service fee due hereunder, which lien shall be junior and subordinate in all respects to the lien and rights of the Carrier Trust to such funds under the Carrier Trust Mortgage.  Agent may proceed in law or in equity, as appropriate, to enforce such lien.  Receiver and Agent shall inform any settlement agent charged with the closing of the sale or lease of the Property of the provisions of this Agreement.

21.   Receiver hereby authorizes Agent to erect signage on the Property during the term of this Agreement and to remove other "For Sale" signs therefrom.

22.   This Agreement contains all the agreements and understandings between the parties hereto, whether oral or written, and any modification or amendment hereto must be in writing, signed by both Receiver and Agent.

23.   Receiver and Agent acknowledge and agree that the Carrier Trust has a first priority mortgage lien on the Property and that the Carrier Trust's lien shall attach to the sale proceeds and the Carrier Trust shall have a first priority lien and security interest in said sales proceeds.  Receiver and Agent further acknowledge and agree that the Carrier Trust shall have the right to credit bid

("Credit Bid") up to the full amount of the indebtedness, which shall include unpaid principal, accrued interest, late fees, attorney's fees and costs, and any protective advances made, that are secured by the lien of its mortgage (the amount of the unpaid principal and the date from which unpaid interest accrues thereon is set forth in the attached Exhibit "B"). In the event that a third party other than the Carrier Trust is the highest bidder for the Property at the sale of the Property, no commission or fee provided for hereunder shall be paid to the Agent until and unless the full amount of the Credit Bid is first paid to the Carrier Trust.

24.  Receiver and Agent acknowledge that the Carrier Trust has initiated foreclosure proceedings against the Property.  This Agreement, and the right of the Agent to recover a commission or fee as provided herein, will expire automatically upon a foreclosure sale of the Property or upon the Carrier Trust obtaining a deed-in-lieu of foreclosure prior to, or after, the end of the listing period.

25.  The $1,000,000.00 "Stalking Horse Contract Price" set forth above is not intended to be an absolutely acceptable sales or auction price, but is merely a suggested minimum starting point for bidding at an auction sale or other sales opportunities.

26.  This Listing Agreement may be signed in counterparts.

[SIGNATURE PAGES BEGIN ON NEXT PAGE]

Exhibit "A"
Motion for Entry of Order Approving Sale
6:13-cv-00657-JA-KRS

In acknowledgement of the foregoing Commercial Listing Agreement, this Agreement has been executed by Receiver and Agent as of the Effective Date set forth above.

AGENT:
MOECKER REALTY, INC./SPERRY VAN NESS
COMMERCIAL REALTY

By _____
Name: J. KEITH KIDWELL
Title: BROKER

RECEIVER:
MICHAEL E MOECKER, RECEIVER FOR BLUECHIP
ENERGY, LLC

By: _____
Name: _____
Title: _____

5 of 8

Moecker & Associates                                3523850311              p.2

In acknowledgement of the foregoing Commercial Listing Agreement, this Agreement has been executed by Receiver and Agent as of the Effective Date set forth above.

AGENT:                                          RECEIVER:
MOECKER REALTY, INC./SPERRY VAN NESS            MICHAEL E MOECKER, RECEIVER FOR BLUECHIP
COMMERCIAL REALTY                               ENERGY, LLC

By_____             By_____
Name:_____             Name:_____ N.E. Moecker_____
Title:_____            Title:_____Receiver_____

Exhibit "A"
Motion for Entry of Order Approving Sale
6:13-cv-00657-JA-KRS

In acknowledgement of the foregoing Commercial Listing Agreement, this Agreement has been executed by the Carrier Trust as of the Effective Date set forth above.


JEFFERY L. CARRIER REVOCABLE TRUST

By _____

Name: _____ JEFFERY L CARRIER _____

Title: _____ TRUSTEE _____

6 of 8

SunTrust Equipment and Leasing Corp. Joinder and Consent

SunTrust Equipment Finance and Leasing Corp. ("SunTrust "), the owner and holder of a security interest in the personal property being held by the Receiver in the above referenced case, hereby consents to the Receiver entering into this Agreement, and acknowledges and agrees that the Carrier Trust has a superior mortgage lien on the real property more particularly described on Exhibit "A," and that the Carrier Trust's lien shall attach to the sale proceeds, and the Carrier Trust shall have a superior lien and security interest in said sales proceeds, but only to the extent that the proceeds are directly traceable to the sale of the real property and hereditaments.  SunTrust consents to the release to the Carrier Trust of the Auction proceeds to the extent of the Carrier Trust's maximum credit bid amount without the need for the Receiver to seek SunTrust's further approval or consent to such release. To the extent that the proceeds are traceable to the sale of personalty, SunTrust does not agree or consent, and asserts that SunTrust has a superior security interest.  SunTrust  acknowledges and agrees that the Carrier Trust shall have the right to a credit bid up to the full amount of the indebtedness legally due that issecured by the lien of its mortgage.

SunTrust Equipment Finance and Leasing Corp.

By
Name: Frank McConnell
Title: SVP

7 of 8

### Fifth Third Bank's Joinder and Consent

Fifth Third Bank ("Fifth Third"), the owner and holder of a security interest in the personal property being held by the Receiver in the above referenced case, hereby consents to the Receiver entering into this Agreement, and acknowledges and agrees that the Carrier Trust has a superior mortgage lien on the real property more particularly described on Exhibit "A," and that the Carrier Trust's lien shall attach to the sale proceeds, and the Carrier Trust shall have a superior lien and security interest in said sales proceeds, but only to the extent that the proceeds are directly traceable to the sale of the real property and hereditaments. Fifth Third consents to the release to the Carrier Trust of the Auction proceeds to the extent of the Carrier Trust's maximum credit bid amount without the need for the Receiver to seek Fifth Third's further approval or consent to such release. To the extent that the proceeds are traceable to the sale of personalty, Fifth Third does not agree or consent, and asserts that Fifth Third has a superior security interest. Fifth Third acknowledges and agrees that the Carrier Trust shall have the right to a credit bid up to the full amount of the indebtedness legally due that issecured by the lien of its mortgage.

Fifth Third Bank

By _____

Name: _MICHAEL B. BARLEY_____

Title: _VICE PRESIDENT_____

8 of 8

Exhibit "A"
Motion for Entry of Order Approving Sale
6:13-cv-00657-JA-KRS

Exhibit "A"

**PROPERTY ADDRESS:**          33601 County Road 437, Sorrento, FL 32776, Lake County

**PARCEL ID #s:**          13-19-27-000100000100
13-19-28-000200002100

**PROPERTY DESCRIPTION:**          $\pm$ 210.37 Acres – The former site of the proposed Sorrento Solar Farm. The property is approximately 50 miles northwest of Orlando, adjacent to two utility substations. There is currently a solar panel ground mount system installed on a portion of the property made up of helical anchors, which is used for the installation of large photovoltaic solar projects.

EXHIBIT "B"
CARRIER TRUST CREDIT BID AMOUNT

Unpaid Principal:    $805,000.00

Unpaid Interest accruing from February 1, 2013, through September 11, 2013: $92,736.00

      With per diem interest until paid in full of $398.99;

Attorney's fees and costs incurred to date  (September 11, 2013) $53,000.00

Total as of September 11, 2013:  $950,736.00

Together with any additional attorney's fees and costs, and late fees as provided in the Carrier Trust Loan Documents.

A final written updated amount of the Credit Bid shall be issued by the Carrier Trust to the Receiver and Agent within ten (10) days after the Auction Sale.

NAPLES/620943v.1

**REAL ESTATE SALES CONTRACT**

**Receiver Ordered Sale, Michael Moecker**
**United States District Court, Middle District of Florida,**
**Orlando Division Case No. 6:13-CV-00657-JA-KRS**
**33601 County Road 437, Sorrento, FL 32776**

Michael Moecker, as Receiver for Bluechip Power, LLC, *et al.* in case no. 6:13-cv-00657-JA-KRS ("Seller"), and __Arthur H Witte__ ("Buyer") hereby agree that the Seller shall sell, and the Buyer shall buy, the following described real property (the "Property") upon the terms and conditions hereinafter set forth in this Real Estate Sales Contract ("Contract") and any Attachments or Exhibits to this Contract.

1.  **Legal description** of Property located in Lake County, Florida, as more particularly described on **Exhibit "C"** hereto.

2.  **Purchase Price and Payment** (U.S. Currency):

    A.  **Purchase Price**                                                                  $ 1,075,000
    B.  **Buyer's Premium (10% of Purchase Price)**                                          $ 107,500
    C.  **Total Purchase Price**                                                             $ 1,182,500 ⁰⁰
    D.  **Initial Escrow Deposit** (on deposit with Settlement Agent)                        $ 50,000.00
    E.  **Additional Escrow Deposit** (10% OF Total Purchase Price less initial Escrow Deposit)  $ 68,250
    F.  **Balance of Total Purchase Price (to be paid by wire transfer at Closing)**         $ 1,064,250.⁰⁰
    G.  The Total Purchase Price will be adjusted by expenses, costs, and prorations at Closing.
    H.  This Contract is **NOT CONTINGENT** upon financing or other matters of any kind, except as set forth herein.

3.  **Closing Conditions:**
          The Closing ("Closing") will be on or before __October 11, 2013__. Seller has the right to extend the Closing for an additional thirty (30) calendar days by providing written notice to the Buyer. The Closing will be coordinated through the offices of the Settlement Agent: Title Company of South Florida.
          The Total Purchase Price, together with closing costs, will be due and payable by Buyer at Closing by Wire Transfer of immediately available funds to Title Company of South Florida ("Settlement Agent" and "Escrow Agent"), pursuant to written instructions from the Settlement Agent, as provided in this Contract. Buyer shall receive credit for the Initial Escrow Deposit, which shall be released from escrow to Seller and applied by the Settlement Agent towards the Total Purchase Price at Closing.
          Time shall be of the essence as to the performance of Buyer's obligations under this Contract, and specifically as to (i) Buyer's obligation to deliver the Initial Escrow Deposit, and (ii) Buyer's obligations to close and deliver the balance of the Total Purchase Price at Closing.

4.  **Title:**
          A.    Buyer will bear the cost of procuring an Owner's Title Commitment and Policy on the Property.  The Commitment and Owner's Title Insurance Policy will be issued by the Settlement Agent from Title Company of South Florida. A copy of the proposed Commitment has been previously provided to the Buyer, the Buyer has reviewed it and accepted all of the exceptions to the Owner's Title Commitment together with the Permitted Exceptions.
          B.    Except as provided for herein, it is understood and agreed that fee simple title to the Property being sold to the Buyer is free and clear of liens, other than the Permitted Exceptions.
          C.    The Seller will convey title by a Special Warranty Deed (the "Deed") and shall execute a no lien, gap and mechanic's affidavit in the form prepared by the Settlement Agreement, together with a Bill of Sale for any personal property to be included as the Seller may determine.  Seller shall not be required to execute any other documents nor may Buyer change any of the documents to be executed.
          D.    Title to the Property will be subject to the Permitted Exceptions. Buyer agrees to take title to the Property subject to the Permitted Exceptions and to such service contracts which may exist or which contracts Seller has not terminated.
          E.    Buyer agrees that the Property is subject to the following exceptions to clear title (collectively "Permitted Exceptions"), to wit: (i) all laws, ordinances, codes, rules and regulations of applicable governmental authorities pertaining to the ownership, use and occupancy of the Property including, but not limited to, zoning, land use, building codes, existing tenant leases and agrees to take title subject to such matters; (ii) all covenants, restrictions, easements and agreements of record encumbering the Property; (iii) all liens for unpaid municipal charges not yet due and payable and all taxes and assessments for the year of Closing and all subsequent years not yet due and payable, (iv) the state of facts which would be shown by a current survey or inspection of the Property; (v) any open or expired permits not otherwise closed; (vi) any matter created by or through Buyer; (vii) any title matters which Buyer has accepted or is deemed to have accepted as set forth in this Contract; (viii) and the matters set forth in the Commitment.

Page 1 of 5

 Initial

**5.   Expenses:**

    **A.**   All closing costs which are not required by law to be paid by Seller will be the responsibility of, and will be paid by, the Buyer at the Closing unless specifically required of Seller in this Contract. Without limiting the foregoing, at the Closing, Buyer shall pay for (i) the cost of a loan policy of title insurance and related endorsements and all other expenses in connection with Buyer obtaining a loan, (notwithstanding any of the references in this paragraph to Buyer obtaining a loan, nothing contained herein shall be deemed to make the Contract contingent in any manner on Buyer obtaining financing nor shall any delay in Closing be permitted); (ii) commissions and fees as specified in this Contract; (iii) settlement fees charged by Settlement Agent; (iv) Buyer and Seller shall pay for their own attorney's fees; (v) Buyer shall pay for the documentary stamps on the deed; and (vi) Buyer shall pay any and all other closing costs.

    **B.**   Real estate taxes, utilities and other expenses of the Property shall be paid by Buyer.

    **C.**   Intentionally omitted.

    **D.**   Compensation for _Moecker Realty_ as commission ($_37,625.00_), which is _3.5_ % of the Final Bid Price and shall be paid by Seller at Closing from Seller's proceeds received at Closing, if and only if the Closing occurs. Any and all such commissions shall be paid only upon closing and funding of the Total Purchase Price.

    **E.**   Compensation for _Sperry Van Ness Commercial_ as commission ($_37,625.00_), which is _3.5_ % of the Final Bid Price and shall be paid by Seller at Closing from Seller's proceeds received at Closing, if and only if the Closing occurs. Any and all such commissions shall be paid only upon closing and funding of the Total Purchase Price.

    **F.**   Compensation for _Jan Wambura – RE/MAX Realty Center_ ("Buyer's Qualifying Licensed Real Estate Broker") as commission ($_32,250.00_), which is 3% of the Final Bid Price and shall be paid by the Seller at closing from Seller's proceeds received at Closing, if and only if the Closing occurs. Any and all such commissions shall be paid only upon Closing and funding of the Total Purchase Price.

    **G.**   The parties each represent and warrant to the other that they have not dealt with any real estate brokers, salesperson, or finders to whom a brokerage commission is due other than as stated in subparagraphs' 5.D. E. and F. above (collectively' "Broker"). If a claim for commission in connection with this transaction is made by any broker, salesperson or finder claiming to have dealt through or on behalf of one of the parties hereto other than Broker, such party shall indemnify, defend and hold the other party hereunder harmless from and against all liabilities, damages, claims, costs, fees and expenses (including reasonable attorneys' fees and court costs at trial and all appellate levels) with respect to said claim for commission or other payment of any kind whatsoever. The provisions of this paragraph shall survive the Closing or any earlier termination or cancellation of the Contract notwithstanding any provision hereof to the contrary.

**6.   Special Clauses:**

    **A.**   When executed by Seller and Buyer, this Contract shall be binding on all parties, their heirs, personal representatives, successors, and assigns.

    **B.**   Settlement Agent shall hold Escrow Deposit(s) in escrow pending the Closing in a non- interest bearing account. It is agreed that the duties of the Escrow Agent are only as herein specifically provided and purely ministerial in nature, and the Escrow Agent shall incur no liability whatever except for willful misconduct or gross negligence. The Seller and Buyer each release the Escrow Agent from any act done or omitted to be done by the Escrow Agent in the performance of its duties hereunder, except the parties shall not release Escrow Agent from willful misconduct or gross negligence. The Escrow Agent is acting as stakeholder only with respect to the Escrow Deposit(s). The parties hereby agree that at such time as either party alleges that there is a default or other event entitling the other party to the Escrow Deposit(s), then the Escrow Agent shall send notice to the Buyer and Seller advising that the other party has made demand on the Escrow Agent for such Escrow Deposit(s). If the parties do not dispute the authority of the Escrow Agent to disburse the Escrow Deposit(s) as set forth in the Escrow Agent's notice within ten (10) calendar days of delivery of such notice by the Escrow Agent that the Escrow Agent intends to disburse the Escrow Deposit(s), then the Escrow Agent is hereby authorized to disburse the Escrow Deposit(s) as set forth in the Escrow Agent's notice. If there is any valid dispute as to whether the Escrow Agent is obligated to deliver the Escrow Deposit(s) or as to whom the Escrow Deposit(s) is to be delivered and a notice of objection as provided above is received, the Escrow Agent shall not make any delivery, but in such event, the Escrow Agent shall hold same until receipt by it of an authorization in writing, directing the disposition of same executed by Seller and Buyer; or in the absence of such authorization, the Escrow Agent shall hold the Escrow Deposit(s) until final determination of the rights of the parties in the appropriate proceedings.

    If such written authorization is not given or proceedings for such determination are not begun within thirty (30) calendar days of written demand by Escrow Agent to Seller and Buyer and diligently continued, the Escrow Agent may, but is not obligated to, bring an appropriate action or proceeding to interplead such Escrow Deposit(s). Any such interpleader action must be brought in Broward County, Florida. The Escrow Agent shall be reimbursed for all costs and expenses of such action or proceeding, including, without limitation, reasonable attorneys' fees and disbursements, by the party determined not to be entitled to the Escrow Deposit(s). Upon making delivery of the Escrow Deposit(s), the Escrow Agent shall have no further liability unless such delivery constituted willful misconduct or gross negligence. The provisions of this Paragraph 6.B. shall survive Closing or any earlier termination of this Agreement.

/ Initial

Exhibit "B"
Motion for Entry of Order Approving Sale
6:13-cv-00657-JA-KRS

C.      If Buyer fails to perform under this Contract, then, as Seller's sole and exclusive remedy under this Contract, the Settlement Agent is hereby irrevocably immediately directed and instructed that the Initial Escrow Deposit and, if delivered by Buyer, the Additional Escrow Deposit shall be forfeited and paid over to Seller as agreed liquidated damages in order to compensate Seller for the damages caused by such breach and not as a penalty, except Buyer shall not be released of its obligations which survive termination of this Contract ("Surviving Obligations"). Buyer's qualifying Licensed Real Estate Broker shall not be entitled to any compensation if Buyer fails to perform under this Contract or if the closing does not occur for any reason.

D.      In the event of Seller's default under this Contract, Buyer's sole remedies shall be (i) to receive the return of Buyer's Escrow Deposit(s), at which time the Contact shall cease and terminate and Seller and Buyer shall have no further obligations, liabilities or responsibilities to one another; or (ii) seek specific performance of Seller's obligation under this Contract.  Buyer shall not have any claim against Seller (nor shall Seller be liable) for damages (actual, special, punitive or otherwise) and hereby waives any such claims.  This paragraph shall survive Closing or any earlier termination of this Contract.

E       In the event any litigation arises under this Contract, the prevailing party shall be entitled to recover from the non- prevailing party all of their reasonable attorney's fees, court costs, and expenses, including those incurred on appeal.  The provisions of this section shall survive closing or earlier termination of this Agreement.

F.      The risk of loss or damage of such property by fire shall remain with the Seller up to the time of the Closing and thereafter, on and after the Closing, by the Buyer.

G.      The Settlement Agent receiving Escrow Deposit funds or equivalent is authorized and agrees by acceptance of them to deposit them promptly, hold same in escrow and, subject to clearance, disburse them in accordance with terms and conditions of this Contract. Failure of funds to clear shall not excuse Buyer's performance. Settlement Agent shall not be responsible for any bank related failure in connection with the Escrow Deposit.

H.      The Buyer's Executed General Terms and Conditions of Sale are attached hereto and made a part of this Contract.  In the event a conflict exists between this Contract and the General Terms and Conditions of Sale, then, (i) prior to Buyer's execution and delivery of this Contract, the terms of the General Terms and Conditions of Sale shall govern and control and (ii) following Buyer's execution and delivery of this Contract, the terms of this Contract shall govern and control over the General Terms and Conditions of Sale.

I.       The Property is sold in "AS IS WHERE IS" condition and with all faults and defects, with no representations or warranties express or implied. The "AS IS" Rider attached hereto as **Exhibit "B"** is hereby incorporated into this Contract and made a part hereof for all purposes.

J.      Buyer may not assign this Contract without the express written consent of the Seller in Seller's sole discretion which may be unreasonably withheld delayed or conditioned other then to an entity solely owned and controlled by Buyer and its present principals.

K.      See Disclosures attached hereto as **Exhibit "A"** and made a part hereof.  If the Property is destroyed in part or in whole, Buyer shall close but shall be assigned any applicable insurance proceeds available after the payment of the loans encumbering the Property.

L.      This Contract may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Contract. This Contract shall not bind Seller or Buyer as an offer or Contract unless a fully executed counterpart of this Contract is delivered by Buyer and Seller. Signatures to this Contract transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

M.      The transmittal of an unexecuted draft of this document for purposes of review shall not be considered an offer to enter into this Contract until executed by Seller and Buyer.  Buyer's signature constitutes an offer to Seller.  Neither party shall be construed to be the drafter of the Contract, and the Contract language shall not be held against either party.

N.      This Contract and the rights and obligations of the parties hereunder shall in all respects be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida. The parties hereby agree that all actions or proceedings initiated and arising directly or indirectly out of this Contract and any related documents shall be litigated solely in the courts situated in Lake County, Florida. Buyer and Seller waive any claim that the courts situated in Lake County, Florida, are an inconvenient forum or an improper forum based on lack of venue.

O.      THE PARTIES HEREBY IRREVOCABLY WAIVE THEIR RIGHTS TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATED TO THIS CONTRACT.

P.      If any provision of this Contract is held or rendered illegal or unenforceable, it shall be considered separate and severable from this Contract and the remaining provisions of this Contract shall remain in force and bind the parties as though the illegal or unenforceable provision had never been included in this Contract.

Q.      Buyer shall not record this Contract or any memorandum of its terms.  The Buyer hereby indemnifies and holds the Seller harmless for all loss, cost or expense, including, but not limited to, attorneys' fees and costs through all trial and appellate levels for Buyer's breach of this covenant.  The provisions of this Section 6.Q. shall survive any termination of this Contract.  Buyer is not permitted to amend this Contract without the express written consent of the Seller, which may be withheld in Seller's sole discretion.  Any and all notices in connection with this Contract shall be in writing. Notices may be transmitted by overnight delivery service, hand delivery or via e-mail.  Notice to or from a party's attorney shall constitute notice from or to such party.  All time periods shall expire at 11:59 pm as of the time where the Property is located.

Page 3 of 5

Initial

IN ACCEPTANCE OF THE ABOVE TERMS AND CONDITIONS OF THE REAL ESTATE SALES
CONTRACT, SELLER HERETO AFFIXES HIS SIGNATURE.  FACSIMILE OR ELECTRONIC
SIGNATURES SHALL BE TREATED AS ORIGINALS.

Seller:     Michael Moecker, Receiver for Bluechip Power, LLC, et al.
            United States District Court, Middle District of Florida,
            Orlando Division Case No. 6:13-CV-00657-JA-KRS
            33601 County Road 437, Sorrento, FL 32776

Signature:  _____

Date:       9/11/13

[Seller's Signature Page to Real Estate Sales Contract]

Page 4 of 5



IN ACCEPTANCE OF THE ABOVE TERMS AND CONDITIONS OF THE REAL ESTATE SALES CONTRACT,
BUYER HERETO AFFIXES ITS SIGNATURE.  FACSIMILE OR ELECTRONIC SIGNATURES SHALL BE
TREATED AS ORIGINALS.

Buyer: _Arthur H Witte_

Signature: _Arthur H Witte_

Date: _9/12/13_

Address: _935 N 453rd Lane_

_Payson IL 62360_

[Buyer's Signature Page to Real Estate Sales Contract]

Page 5 of 5

Exhibit "B"
Motion for Entry of Order Approving Sale
6:13-cv-00657-JA-KRS

## EXHIBIT "A"

## DISCLOSURES

Under the laws of the State of Florida, each prospective Buyer is hereby advised as follows:

(a)      Radon Gas.  Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to person who is exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida.  Additional information regarding radon and radon testing may be obtained from you county public health department. The foregoing notice is provided in order to comply with state law and is for informational purposes only.  Seller does not conduct radon inspection with respect to the Property, and specifically disclaims any and all representations or warranties (express or implied) as to the absence of radon in connection with the Property.

(b)      Mold, Mildew and Other Biological Toxins Disclosure.  Under the laws of the State of Florida, Buyer is hereby advised that **Mold, mildew and other biological toxins are found both indoors and outdoors.  The presence of mold, mildew and other biological toxins may cause property damage or health problems.  Additional information regarding mold, mildew and other biological toxins and inspections related thereto may be obtained from your county public health unit or a professional trained in that field.**  The foregoing notice is provided in order to comply with state law and is for informational purposes only. Seller does not conduct mold, mildew or other biological toxins inspections with respect to the Property, and specifically disclaims any and all representations or warranties (express or implied) as to the presence or absence of mold, mildew or other biological toxins in connection with the Property.

(c)      Property Taxes.  BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

* * * * * * *

Initial

**EXHIBIT "B"**

**AS-IS RIDER**

Buyer represents and warrants to Seller that Buyer has examined and investigated to Buyer's full satisfaction the Property, and that except as otherwise expressly set forth in this Contract, Seller has not made any warranties or representations (express or implied) concerning the Property or any portion thereof. Buyer acknowledges and agrees that except as otherwise expressly set forth in this Contract the Property is being transferred in its  "AS IS" "WHERE IS" with all faults and defects condition and Seller has not made, does not make, and specifically negates and disclaims any representations, warranties, promises, covenants, contracts, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present, or future, of, as to, concerning, or with respect to (a) the value, nature, quality, or condition of the Property, including, without limitation, the water, soil, geology, construction, materials or any and all aspects of the physical condition of the Property; (b) the income to be derived from the Property, (c) the suitability of the Property for any and all activities and uses which Buyer may conduct thereon, (d) the compliance of or by the Property or its operation with any laws, rules, ordinances, or regulations of any applicable governmental authority or body, including, but not limited to, compliance with any special use permits or developments of regional impact, permits, code enforcement or compliance, environmental conditions for which Buyer assumes any and all responsibility and shall indemnify and hold Seller harmless from and against any and all claims, losses, damages, actions, suits, liabilities, sums, accounts, expenses, fees and costs (including, without limitation, attorney's fees and costs through trial and any and all appeals) in connection with any of the matters contained in this subparagraph (e) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose of the Property, (f) the manner or quality of the construction or materials incorporated into the Property, (g) the manner, quality, state of repair, or lack of repair of the Property, (h) the existence of hazardous materials, mold, mildew, other biological toxins or governmental requirements at the Property, (i) the existence, quality, nature, adequacy, or physical condition of any utilities serving the Property, (j) the development potential of all or any part of the Property, (k) any leases or occupancy agreements affecting the Property, (l) merchantability or habitability of the Property or (m) any other matter with respect to the Property, and specifically, that, except as otherwise expressly set forth in this Contract, Seller has not made, does not make and specifically disclaims any representations regarding concurrency, or compliance with any special use permits, developments of regional impact, environmental protection, pollution, or land use laws, rules, regulations, orders, or requirements, including the existence in or on the Property of hazardous materials.

Any special assessments, municipal assessments or liens that are due or incurred after Closing will be the responsibility of the Buyer.  Seller shall not be required to comply with or bring the Property into compliance with any regulations of any governmental authority, close out any open or expired permits or cure any code enforcement violations and Buyer expressly assumes all responsibility for same.

Except as otherwise expressly set forth in this Contract, Buyer further acknowledges and agrees that having been given the opportunity to inspect the Property, Buyer is relying solely on its own investigation of the Property and not on any information provided or to be provided by Seller and, by Closing and taking title to the Property, the Buyer shall be deemed to have accepted the Property "As is" "Where is" with all faults and defects and waived all objections or claims against Seller or Seller's members, officers, directors, shareholders, employees, members, managers, partners, attorneys, and agents (including, but not limited to, any right or claim of contribution) arising from or related to the Property or to any hazardous materials or biological toxins in, on or under the Property and any claim it has, might have had, or may have against Seller with respect to the condition of the Property, either patent or latent.  Buyer further acknowledges and agrees that any information provided or to be provided with respect to the Property was obtained from a variety of sources and that Seller has not made any independent investigation or verification of such information and, except as otherwise expressly set forth in this Contract, makes no representations as to the accuracy or completeness of such information.  Except as otherwise expressly set forth in this Contract, Seller is not liable or bound in any manner by any verbal or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, servant, or other person.  Buyer further acknowledges and agrees that, except as otherwise expressly set forth in this Contract, to the maximum extent permitted by law, the sale of the Property as provided for herein is made on an "AS IS" "WHERE IS" condition and basis with all faults and defects.

* * * * * * *

Initial

**EXHIBIT "C"**

**LEGAL DESCRIPTION**

**PROPERTY ADDRESS:**
33601 County Road 437, Sorrento, FL 32776, Lake County

**PARCEL ID #s:**
13-19-27-000100000100
18-19-28-000200002100

**PROPERTY DESCRIPTION:**
± 210.37 Acres – The former site of the proposed Sorrento Solar Farm.
The property is approximately 50 miles northwest of Orlando, adjacent to two utility substations. There is currently a solar panel ground mount system installed on a portion of the property made up of helical anchors, which is used for the installation of large photovoltaic solar projects.



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUNTRUST EQUIPMENT                    )
FINANCE AND LEASING CORP,             )
                                      )
              Plaintiff               )      CASE NO. 6:13-cv-00657-JA-KRS
                                      )
vs.                                   )
                                      )
BLUECHIP POWER, LLC, f/k/a            )
BLUECHIP ENERGY, LLC,                 )
*ET AL.*,                             )
                                      )
              Defendants.             )
_____)

## ORDER APPROVING RECEIVER'S SALE
## OF REAL PROPERTY BY PUBLIC AUCTION

This matter came on for consideration upon the Unopposed Motion for Entry of an Order Approving Receiver's Sale of Real Property at Public Auction (Doc. No. __) (the "Motion"). Upon consideration of the Motion, having noted no objection to the relief sought therein, and being otherwise fully advised in the premises, the Court finds the Motion is due to be granted. Accordingly, it is

1.      The Motion is GRANTED.

2.      The Court approves the terms of the sale of the real property located at 33601 County Road 437, Sorrento, Lake County, Florida 32776, by public auction held on September 11, 2013, at 10:00 a.m. on the premises of the real property, as set forth in that certain Real Estate Sales Contract between the Receiver and Arthur H. Witte, the successful bidder at the auction (the "Sales Contract"). The legal description for the real property sold at auction is attached hereto as **Schedule "A."**

3.      The Court further authorizes the Receiver to take such actions necessary to

consummate the Sales Contract.

       DONE AND ORDERED this ___ day of September, 2013, in Orlando, Florida.


                               _____

                               HON. JOHN ANTOON
                               UNITED STATES DISTRICT COURT JUDGE

<u>Schedule "A"</u>

The real property sold by the Receiver at public auction on September 11, 2013, consists of the following parcels:

Legal Description

PARCEL I:

A portion of Section 13, Township 19 South, Range 27 East, and Section 18, Township 19 South, Range 28 East, Lake County, Florida, being more particularly described as:

Begin at the Southwest corner of Sorrento Hills, Phase 3, as recorded in Plat Book 52, Pages 69 through 78, Public Records of Lake County, Florida; thence run North 89°53'44" East, along the South line of said Plat, a distance of 1327.47 feet to the Southwest corner of Sorrento Hills, Phases 1 and 2, as recorded in Plat Book 48, Pages 4 through 15, Public Records of Lake County, Florida; thence run North 87°49'27" East, along said South Plat Line, a distance of 2740.01 feet to the East line of the West 1/2 of said Section 18; thence departing said South line, run South 00°11'26" West, along said East line a distance of 2441.71 feet to the North line of Sumter Electric Cooperative, Inc. parcel as described in Official Records Book 2386, Page 2371, as recorded in Lake County, Florida; thence departing said East line, run South 88°58'14" West along the said North line, a distance of 439.00 feet to the Northwest corner of said Sumter Electric Parcel; thence departing said North line, run South 00°11'26" West along the West line of said Sumter Electric Parcel, a distance of 300.00 feet to the Southwest corner of said Sumter Electric Parcel and the North line of a Florida Power Corporation parcel, as described in Official Records Book 691, Page 853, as recorded in Lake County, Florida; thence departing said West line run South 88°58'14" West along said North line, a distance of 406.52 feet to the Northwest corner of said Florida Power Corporation parcel; thence departing said North line, run South 18°9'24" East along the Westerly line of said Florida Power Corporation parcel, a distance of 606.96 feet to the Southwest corner of said Florida Power Corporation parcel and the South line of said Southwest 1/4 of Section 18; thence departing said Westerly line, run South 88°58'14" West along the said South line, a distance of 1354.42 feet to the Southeast corner of the South 3/4 of the West 1/2 of the West 1/2 of said Southwest 1/4; thence departing said South line, run North 00°12'01" East along the East line of said South 3/4 of the West 1/2 of the West 1/2 of the Southwest 1/4, a distance of 1978.36 feet to the Northeast corner of the South 3/4 of the West 1/2 of the West 1/2 of said Southwest 1/4; thence departing said East line, run South 88°43'43" West, along the North line of South 3/4 of the West 1/2 of the West 1/2 of the Southwest 1/4; a distance of 722.85 feet to the Southeast corner of the North 1/2 of the Northeast 1/4 of the Southeast 1/4 of said Section 13; thence departing said North line run South 89°45'06" West, along the South line of said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13, a distance of 1,323.86 feet to the Southwest corner of said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13; thence departing said South line, run North 00°15'51" West, along the West line said North 1/2 of the Northeast 1/4 of the Southeast 1/4 of Section 13, a distance of 659.00 feet to the Southwest corner of the Southeast 1/4 of the Northeast 1/4 of said Section 13; thence departing said West line, run North 00°17'47" West along the West line of said Southeast 1/4 of the Northeast 1/4 of Section 13, a distance of 635.96 feet to the Point of Beginning.

PARCEL II:

That part of the South 1,701.91 feet, less the South 880.20 feet thereof, of the Southeast 1/4 of Section 18, Township 19 South, Range 28 East, Lake County, Florida, lying West of the Westerly right-of-way line of State Road #437.