# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SUNTRUST EQUIPMENT FINANCE AND LEASING CORP.,**

**Plaintiff,**

**v.** **Case No: 6:13-cv-657-Orl-41KRS**

**BLUECHIP POWER, LLC, BLUECHIP ENERGY, LLC, ADVANCED SOLAR PHOTONICS, LLC, LASER PHOTONICS, LLC, ICT INVESTMENTS, LLC, US INVESTING CORPORATION, DEMITRI NIKITIN, SVETLANA NIKITIN, FIFTH THIRD BANK, AEGIS BUSINESS CREDIT, LLC, ON DECK CAPITAL, INC., NEWLOGIC BUSINESS LOANS, INC., WANXIANG AMERICA CORP., RINEHART DEVELOPMENT AND INVESTMENT GROUP, LLC, SORRENTO SOLAR FARM LLC and SEMINOLE COUNTY TAX COLLECTOR,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST ADVANCED SOLAR PHOTONICS, LLC (Doc. No. 238)** |
| **FILED:** | **August 28, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BLUECHIP POWER, LLC (Doc. No. 239)** |
| **FILED:** | **August 28, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BLUECHIP ENERGY, LLC (Doc. No. 240)** |
| **FILED:** | **August 28, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST LASER PHOTONICS, LLC (Doc. No. 241)** |
| **FILED:** | **August 28, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST ICT INVESTMENTS, LLC (Doc. No. 242)** |
| **FILED:** | **August 28, 2014** |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT FINAL JUDGMENT AGAINST US INVESTING CORPORATION (Doc. No. 243)** |
| **FILED:** | **August 28, 2014** |

## I. BACKGROUND.

This action involves a number of disputes regarding ownership and lease obligations relating to the manufacture of solar panels. Plaintiff, Suntrust Equipment Finance and Leasing Corp. ("Suntrust"), initiated the underlying action on April 23, 2013, by filing a Verified Complaint for Monetary Judgment, Petition for Appointment of Receiver, Replevin, Foreclosure, and Injunctive Relief against a number of Defendants. Doc. No. 1.

In Count III of Suntrust's Verified Complaint, Suntrust alleged that Defendants BlueChip Energy, LLC f/k/a Complete Electronic Contractors ("BlueChip Energy"); Michael Moecker as assignee of BlueChip Energy; BlueChip Power, LLC f/k/a Blue Chip Energy ("BlueChip Power"); Laser Photonics, LLC ("Laser"); Advanced Solar Photonics, LLC ("Advanced Solar"); ICT Investments, LLC ("ICT"); and, US Investing Corporation ("US Investing") (collectively, the "Lessee Defendants") breached an Equipment Lease Agreement and associated documents (referred to as the "Lease Obligation and Security Documents"). In Counts IV and V of the complaint, Suntrust alleged that Defendants Demitri Nikitin a/k/a Dimitri Nikitin a/k/a Dmitri Nikitin ("D. Nikitin") and Svetlana Nikitin a/k/a Svetlana Nikitina ("S. Nikitin")(collectively the "Nikitin Defendants") guaranteed the performance of the Lessee Defendants under the Lease Obligation and Security Documents.

On September 25, 2013, one of the other defendants named in Suntrust's Verified Complaint, Wanxiang America Corp. ("Wanxiang"), filed a First Amended Cross and Counter and Third Party Complaint against, among others, Suntrust and certain of the Lessee Defendants, raising five counts for relief. Doc. No. 152. On August 21, 2014, the Court entered partial summary judgment in favor of Wanxiang on Count IV of its First Amended Cross and Counter and Third Party Complaint. Doc. No. 236. A bench trial is scheduled on October 1, 2014 on the remaining claims asserted by Wanxiang. Doc. No. 234.

Meanwhile, each of the Lessee Defendants failed to appear and respond to Suntrust's Verified Complaint. At the request of Suntrust, the Clerk of Court entered defaults against each of these companies. Doc. Nos. 113 (US Investing); 116 (BlueChip Power); 124 (Laser); 125 (ICT); 126 (BlueChip Energy); 127 (Advanced Solar).

The Nikitin Defendants also failed to appear and respond to Suntrust's Verified Complaint. At the request of Suntrust, the Clerk of Court entered defaults against them. Doc. Nos. 114 (D. Nikitin); 115 (S. Nikitin). On January 6, 2014, a suggestion of bankruptcy was filed as to the Nikitin Defendants, Doc. No. 198, and the Court stayed the case as to both of them, Doc. No. 200.

On May 22, 2013, the Court established a receivership to take possession, control, and charge of the property and assets of the Lessee Defendants and appointed Michael Moecker as the Receiver. Doc. No. 56 at 6. On June 18, 2013, Suntrust dismissed all of its claims against Mr. Moecker. Doc. Nos. 81, 97. On May 14, 2014, the Court approved the Receiver's Final Report and terminated the receivership, releasing and exonerating the Receiver of all claims against him. Doc. No. 232.

On August 27, 2014, the Court dismissed Counts I, II, VI, and VII of Suntrust's Verified Complaint as moot. Doc. No. 237. Suntrust now seeks entry of a default judgment against each of the Lessee Defendants on Count III of the Verified Complaint.[1]

The motions have been referred to the undersigned for issuance of a Report and Recommendation. Suntrust was not required to serve the motions on the Lessee Defendants because they are in default for failing to appear. Fed. R. Civ. P. 5(a)(2). Therefore, the motions are ripe for resolution.

## II. STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to

[1] Suntrust's motions for default final judgment against the Lessee Defendants are substantially similar to one another. Accordingly, in this Report and Recommendation, a citation to a particular provision of one of the motions refers to identical provisions in the other motions unless otherwise noted.

admit facts that are not *well-pleaded* or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This analysis applies equally to motions for default judgment. *See De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Smyth*, 420 F.3d at 1232 n.13.

## III. RELEVANT ALLEGATIONS OF THE COMPLAINT.

On December 10, 2012, Suntrust entered into Equipment Lease Agreement No. 08830 with the Lessee Defendants. Doc. No. 1 ¶ 28; Doc. No. 1-2.[2] The Equipment Lease Agreement

[2] Suntrust attached to its complaint, among other things, the Lease Obligation and Security Documents. *See, e.g.*, Doc. No. 1-2. Accordingly, I will consider these documents as part of the Verified

references and incorporates Equipment Schedule No. 001, which in turn references and incorporates a Schedule of Equipment. Doc. No. 1 ¶¶ 29-31; Doc. Nos. 1-3, 1-5. Collectively, these documents provided for the sale to Suntrust, and the lease back to the Lessee Defendants, of certain equipment used by the Lessee Defendants in their businesses. Doc. No. 1 ¶¶ 28, 32. The Lessee Defendants also executed an Acceptance Certificate certifying that, among other things, they had received, inspected and approved the leased property, and a Pay Proceeds Letter/Disbursement Authorization authorizing Suntrust to make final payment for the leased equipment. *Id.* ¶¶ 33-34; Doc. Nos. 1-12, 1-25. Collectively, these documents (and others not herein described) are referred to as the Lease Obligation and Security Documents.

The Lease Obligation and Security Documents referenced above were executed by BlueChip Power, BlueChip Energy, Advanced Solar, Laser and ICT through Svetlana Nikitina, as their manager. The same documents were executed by US Investing through Thomas Gregory, as its Chief Investment Officer. The documents were also executed by Suntrust through Lorraine Carpenter, as its Vice President. *See, e.g.*, Doc. No. 1-2 at 10-11; Doc. No. 1-3.

The Equipment Lease Agreement provides that the Lessee Defendants agreed to pay rental installments pursuant to the Equipment Schedule. Doc. No. 1-2 ¶ 2. The Equipment Schedule provides for monthly payments of $92,528.00 for a period of 60 months.[3] Doc. No. 1-3 ¶¶ 2, 3(b). The Lessee Defendants' obligations under the terms of the Lease Obligation and Security Documents are joint and several. Doc. No. 1-2 at 12. The Lease Obligation and Security Documents further provide that the failure to make a monthly payment under the Equipment

---

Complaint. *See* Fed. R. Civ. P. 10(c) (Copies of written instruments that are attached as exhibits to the complaint are part of the complaint for all purposes.).

[3] The Equipment Schedule provides that the first month of the 60-month rental payment period was prorated, with the amount owed being $583.33. Doc. No. 1-3 ¶¶ 2, 3(a).

Schedule within ten days after the payment was due constitutes an event of default under the agreement. Doc. No. 1-2 ¶ 15(a).

The Lease Obligation and Security Documents further provide that, in the event of a default, Suntrust may declare the lease agreement to be in default, accelerate the unpaid Rent due without notice or demand, and proceed at law or equity to recover damages and all reasonable legal fees, enforcement costs and expenses incurred by reason of the default. *Id.* ¶ 16(a), (c) and p. 17. If the leased equipment that is subject to the Lease Obligation and Security Documents is sold, the net proceeds of that sale are to be applied to the Lessees Defendants' obligations under the Lease Obligation and Security Documents. *Id.* ¶ 16(a)(v) and p. 17.

After entering into the Lease Obligation and Security Documents, an event of default occurred. Specifically, the Lessee Defendants failed to make the rental payment due on February 28, 2013, pursuant to the terms of the agreement. Doc. No. 1 ¶¶ 45, 88.[4]

As a result, Suntrust exercised its right to terminate the Lease Obligation and Security Documents and accelerate all payments due under the terms of the agreement. *Id.* ¶ 49. As of the date of the filing of its Verified Complaint, the Lessee Defendants and the Nikitin Defendants, as guarantors, had refused to tender the amounts owed under the Lease Obligation and Security Documents. *Id.* ¶¶ 52, 92. Suntrust alleges it was damaged by the Lessee Defendants' default under the Lease Obligation and Security Documents. *Id.* ¶ 93.

[4] Suntrust alleges that three other events of default occurred. *See* Doc. No. 1 at ¶¶ 46-48, 89-91. However, because the Lessee Defendants' failure to make rental payments pursuant to the terms of the Lease Obligation and Security Documents is sufficient to establish Suntrust's breach-of-contract claim, as discussed below, I will not address the other three events of default alleged.

## IV. ANALYSIS.

### *A. Service of Process on the Lessee Defendants.*

Only "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner," may the Clerk of Court enter a default against that party and may the plaintiff seek entry of a default judgment. *Kelly v. Florida*, 233 F. App'x 883, 885 (11th Cir. 2007) (citing Fed. R. Civ. P. 55(a)) (unpublished opinion cited as persuasive authority). Here, service of process was properly effectuated under Fed. R. Civ. P. 4(e)(1) and (h)(1)(A) against BlueChip Energy, BlueChip Power, Advanced Solar and Laser by service of the summons and Verified Complaint on each company's respective registered agent. *See* Doc. Nos. 17, 18, 19, 20.

Service of process was also properly effected on ICT and US Investing. As to each of these Defendants, a process server averred that he or she delivered a copy of the summons and verified complaint to a customer service representative of the registered agent of each Defendant. Doc. No. 247 at 6-7; Doc. No. 248 at 6-8. Rules 4(e)(1) and (h)(1)(A) permit service of process to be effected following the state law in the state where the district court is located. Florida law provides that a process server may serve any employee of the registered agent of a limited liability company or an agent designated by a corporation during the first attempt at service. Fla. Stat. §§ 48.062(1), 48.081(3)(a).

### *B. Liability of the Lessee Defendants.*

The Lease Obligation and Security Documents contain a choice of law provision, providing that "[t]his lease and all of the other lease documents, and the rights and obligations of the parties . . . shall in all respects be governed by, and construed in accordance with, the internal laws" of Maryland. Doc. No. 1-2 ¶ 18(h) (emphasis omitted). Florida courts generally enforce contractual choice-of-law provisions unless the law of the chosen forum "'contravenes strong public policy.'"

*L'Arbalete, Inc. v. Zaczac*, 474 F. Supp. 2d 1314, 1320-21 (S.D. Fla. 2007) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000)). Furthermore, "[a] choice of law provision in a contract 'is presumed valid until it is proved invalid.'" *Id.* at 1321 (quoting *Acosta v. Campbell*, No. 6:04-cv-761-Orl-28DAB, 2006 WL 146208 (M.D. Fla. Jan. 18, 2006)). Here, the Lessee Defendants have defaulted, and as such have not challenged the choice-of-law provision in the agreement. While Suntrust relies on Florida law to establish its breach-of-contract claim, it does not argue, nor has it shown, that the choice-of-law provision in the Lease Obligation and Security Documents is invalid or that Maryland law contravenes strong public policy in Florida. *See, e.g.*, Doc. No. 238 at 4 (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)). Accordingly, Maryland substantive law applies.

Under Maryland law, to establish breach of contract a plaintiff must prove: (1) the existence of a contractual obligation, and (2) a material breach of that obligation. *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010). A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004) (citing *Peer v. First Fed. Sav. & Loan Ass'n of Cumberland*, 331 A.2d 299, 301 (Md. 1975)).

Suntrust alleged in its Verified Complaint that it entered into a valid contract with the Lessee Defendants by agreeing to provide financing to the Lessee Defendants for the purchase of certain equipment in exchange for monthly rental payments, which was adequate consideration for the agreement. The particular terms of this agreement were memorialized in the Lease Obligation and Security Documents and both Suntrust and the Lessee Defendants signed the agreement, which shows that the agreement had definite terms and that, by their signatures, all parties mutually

assented to it. Doc. No. 1 ¶¶ 28-34; Doc. No. 1-2. Accordingly, the allegations in the Verified Complaint establish the existence of a contract under Maryland law.

As to the second element of breach of contract, Suntrust's allegations in the Verified Complaint also establish that the Lessee Defendants materially breached the contract by defaulting on their obligations under the Lease Obligation and Security Documents. The Lease Obligation and Security Documents provide that, among other things, the Lessee Defendants agreed to pay Suntrust $92,528.00 per month for 60 months, starting in December 2012.[5] Doc. No. 1-2 ¶ 2; Doc. No. 1-3 ¶¶ 2, 3(b). The Lease Obligation and Security Documents further provide that the failure to make a rental payment within ten days of the due date constitutes a default under the terms of the agreement. Doc. No. 1-2 ¶ 15(a). The Lessee Defendants' obligations under the Lease Obligation and Security Documents are joint and several. *Id.* at 12. Suntrust alleges that the Lessee Defendants failed to make the rental payment due on February 28, 2013, and have otherwise refused to tender the amounts due under the agreement. Doc. No. 1 ¶¶ 45, 88, 92. These allegations are sufficient to establish that the Lessee Defendants breached their obligation under the Lease Obligation and Security Documents.

Accordingly, I recommend that the Court find that the well-pleaded allegations of the Verified Complaint, which the Lessee Defendants are deemed to have admitted pursuant to their defaults, are sufficient to establish that the Lessee Defendants are jointly and severally liable for breach of the Lease Obligation and Security Documents.

*C. Damages.*

Suntrust seeks to recover damages against the Lessee Defendants in the amount of all unpaid rent due under the Lease Obligation and Security Documents. *See, e.g.*, Doc. No. 238 at 6. In

---

[5] As discussed *supra* in note 3, the first monthly payment was prorated to $583.33.

support of its motions for default final judgment, Suntrust filed the affidavit of Michael Hoehn, Senior Vice President for Suntrust. *See, e.g.*, Doc. No. 238 at 13-14. Mr. Hoehn avers that, as of April 22, 2014, the Lessee Defendants owed Suntrust a total of $4,784,440.00, after deducting payments made by the Lessee Defendants to Suntrust and proceeds received by Suntrust from the sale by the Receiver of the Lessee Defendants' assets, including the equipment subject to the Equipment Lease Agreement.[6] Mr. Hoehn based this damages calculation on his personal knowledge and Suntrust's business records. *Id.* Accordingly, I recommend that the Court find that Suntrust has submitted sufficient evidence to establish its entitlement to an award of damages against the Lessee Defendants in the form of unpaid rental payments in the total amount of $4,784,440.00.

*D. Entry Judgment Against the Lessee Defendants.*

I recommend that the Court find that a final judgment should not be entered against the Lessee Defendants at this stage of the proceedings. First, all the claims pending in the case have not been resolved. Counts IV and V of Suntrust's Verified Complaint against the Nikitin

[6] Although Mr. Hoehn did not detail how he calculated the total amount due under the Lease Obligation and Security Documents, it is clear from the Lease Obligation and Security Documents, the allegations of the Verified Complaint and other documents in the record how he arrived at this figure. The agreement called for 60 monthly payments, with the first payment in the prorated amount of $583.33, which was due in December 2012, when Suntrust funded the purchase of the leased equipment. *See* Doc. No. 1-3 ¶ 3. Suntrust alleges that the Lessee Defendants defaulted by failing to make the rent payment due in February 2013. Doc. No. 1 ¶ 45. Therefore, there were 58 rent payments due. The total unpaid rent due is calculated as follows: ($92,528.00 monthly rental amount) × (58 months of full rental payments owed) = ($5,366,624.00). The Lease Obligation and Security Documents provided that Suntrust would apply monies obtained from other sources to any debt owed. The Receiver's Final Report shows that Suntrust was paid $582,184.00 from the receivership estate. *See* Doc. No. 223 at 8 (Receiver's Final Report showing "Pymt to Secured Creditor $ 582,184.00"); Doc. No. 232 (Order approving the Receiver's Final Report). Accordingly, after these deductions, the amount of unpaid rental payments owed by the Lessee Defendants to Suntrust is $4,784,440.00, calculated as follows: $5,366,624.00 unpaid rent - $582,184.00 received from the receivership estate = $4,784,440.00.

Defendants and Counts I, II, III, and V of Wanxiang's First Amended Cross and Counter and Third Party Complaint remain pending. *See* Doc. Nos. 1, 152.

Federal Rule of Civil Procedure 54 provides as follows:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). Suntrust has made no argument in its motions for default judgment that there is "no just reason for delay" or that the Court should immediately enter a separate final judgment as to the Lessee Defendants.

Additionally, in cases involving more than one defendant, like in this case, a judgment of liability should not be entered against a defaulting party alleged to be jointly liable with other non-defaulting defendants until the matter has been adjudicated with regard to all defendants. *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) ("[A] final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal."). The United States Court of Appeals for the Eleventh Circuit has extended this prohibition against logically inconsistent judgments to other cases beyond those where liability is deemed to be joint. In this circuit, it is "sound policy" that "when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2690; 6 Moore's Federal Practice ¶ 55.06).

Suntrust's claims against the Nikitin Defendants for breach of guaranty (Counts IV and V) are derivative of the breach of contract claim and remain unresolved. Thus, there is a remote

possibility of inconsistent judgments should the Court enter a default judgment on Count III against the Lessee Defendants and the Nikitin Defendants later prove that they did not breach the guaranty agreements because the Lessee Defendants did not default under the Lease Obligation and Security Documents.

Currently, it does not appear that Suntrust is pursuing the breach of guaranty claims against the Nikitin Defendants in the bankruptcy case. Suntrust was given leave by the bankruptcy court to institute adversary proceedings against the Nikitins on or before August 29, 2014. Suntrust did not institute adversary proceedings by that date, and, as of the writing of this Report and Recommendation, it has not sought additional time to do so. *See* Doc. No. 245; *see also In re: Demitri and Svetlana Nikitin*, No. 6:13-bk-15555-KSJ, Doc. Nos. 26, 64 (M.D. Fla. Bankr.). Therefore, the risk of inconsistent judgment is remote. Nevertheless, Suntrust should address the possibility of inconsistent judgments at the time that the claims of Wanxiang are resolved if the claims against the Nikitin Defendants have not then been resolved.

Accordingly, I recommend that the Court defer the entry of judgment against the Lessee Defendants pending further proceedings.

*E. Attorney's Fees, Costs and Fact Information Sheet.*

Suntrust requests that the Court reserve jurisdiction to enter an award of attorney's fees and costs against the Lessee Defendants. *See, e.g.*, Doc. No. 238 at 7. It also requests that the Court enter an Order requiring the Lessee Defendants to complete Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet, including all required attachments. *See, e.g.*, Doc. No. 238 at 7.

Rule 54(d)(2)(B)(i) permits a motion for attorney's fees and related non-taxable expenses be made by motion no later than fourteen days after the entry of judgment. Rule 54(d)(1) permits the

Clerk of Court to tax costs on fourteen days' notice. The Court need not reserve jurisdiction to consider these motions after a final judgment is entered.

Similarly, pursuant to Federal Rule of Civil Procedure 69(a)(2), a judgment creditor may follow Florida law in aid of execution on a judgment. Florida Rule of Civil Procedure 1.560(c), in turn, provides that, if a prevailing party so requests, the judge shall include language in the final judgment requiring the judgment debtor to complete the Florida Rules of Civil Procedure Form 1.977 Fact Information Sheet within 45 days from the date of the final judgment. Accordingly, Suntrust may renew its motion for the Court to require the Lessee Defendants to complete the Fact Information Sheet at the time entry of a final judgment in this case is appropriate.

## V. RECOMMENDATION.

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court do the following:

1. **GRANT in part** the Amended Motions for Default Final Judgment against BlueChip Energy, LLC, BlueChip Power, LLC, Laser Photonics, LLC, Advanced Solar Photonics, LLC, ICT Investments, LLC and US Investing Corporation (Doc. Nos. 238, 239, 240, 241, 242, 243);

2. **FIND** that BlueChip Energy, LLC, BlueChip Power, LLC, Laser Photonics, LLC, Advanced Solar Photonics, LLC, ICT Investments, LLC and US Investing Corporation are liable for breach of the Lease Obligation and Security Documents (Count III);

3. **ASSESS DAMAGES** of $4,784,440.00 against BlueChip Energy, LLC, BlueChip Power, LLC, Laser Photonics, LLC, Advanced Solar Photonics, LLC, ICT Investments, LLC and US Investing Corporation, jointly and severally; and,

4. **DEFER** the entry of final judgment in this case pending further proceedings.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 11, 2014.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy